IN RE B. B. TROUTMAN, SS #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, EMPLOYEE, AND DOUGLAS AIR-
CRAFT COMPANY, INCORPORATED, EMPLOYER, AND EMPLOYMENT
SECURITY COMMISSION OF NORTH CAROLINA.

(Filed 28 April, 1965.)

**1. Master and Servant § 108—**

Where the chairman of the Employment Security Commission hears an
appeal from an appeals deputy and enters a decision and order in respect to
the right of a claimant to recover unemployment benefits, and appeal is
taken therefrom directly to the Superior Court, G.S. 96-4(a), the decision
and order may be deemed the decision and order of the Commission.

**2. Master and Servant § 105—  Whether offer of job requiring less
skill and paying lower wage is "suitable" depends on circumstances.**

Where the work of an employee is terminated by reason of the curtail-
ment of the employer's operations, and the employer immediately offers the
employee another job of a substantially lower classification in respect of
skill and compensation, the holding of the Commission that the substitute
job was not "suitable employment" within the purview of G.S. 96-14(1)
cannot be held erroneous as a matter of law, since whether such job was
suitable may depend upon the length of time the employee remains unem-
ployed and his prospect of obtaining employment at his prior rating and
compensation, and the employee should be given a reasonable time within
which to find work at the higher skill.

APPEAL by Douglas Aircraft Company, Incorporated, from *Walker,
Special Judge,* November 16, 1964 "D" Session of MECKLENBURG.

This proceeding originated January 27, 1964 when B. B. Troutman
filed a claim against Douglas Aircraft Company, Incorporated, of
Charlotte, North Carolina, (Douglas) for unemployment benefits under
the Employment Security Law, G.S. Chapter 96.

Upon appeal by Douglas from a determination made by a Claims
Deputy, an Appeals Deputy determined and declared the claimant
eligible to receive benefits beginning January 27, 1964, and continuing
through February 23, 1964, and that he "should thereafter be paid or
denied benefits in accordance with his claims record." Douglas appealed
to the Employment Security Commission. As to procedure, see G.S.
96-15.

Douglas' appeal to the Commission was heard April 1, 1964 by the
Chairman of the Commission, who made the following findings of fact:

"1.  The claimant filed claim for unemployment insurance benefits
on January 27, 1964, having been separated from employment with
Douglas Aircraft Company, Incorporated, Charlotte, North Carolina,
on January 10, 1964.

"2.  The claimant was first employed by Douglas Aircraft Company,
Incorporated, on August 27, 1956, and remained continuously in its

employ until July 29, 1960, at which time his employment was terminated by the company by reason of no work available. At that time the claimant was offered a transfer within the same plant or location to another job occupation, but he refused the same. The claimant was earning $3.15 an hour at the time of this separation. He was rehired as a tool and die maker on November 21, 1960, at an hourly rate of $2.60 an hour and remained continuously employed until January 10, 1964. At that time his hourly rate of pay was $2.90 an hour. The job as a tool and die maker was terminated by reason of curtailment of operations. Simultaneously with the termination of his employment as a tool and die maker, the claimant was offered a job as an electrical bench assembler at a rate of pay of $2.25 an hour. The claimant refused to accept this new job, and he was separated by the company. The claimant withdrew his vacation and sick pay earned in the amount of $251.52 which paid him through January 26, 1964. The job offered the claimant as an electrical bench assembler entailed operations working at a bench, soldering electrical wires, and it was a simple operation performed mostly by women. The claimant had never performed this type of work. However, he would have had no trouble in mastering the technique, had he accepted such job. Under the terms of the contract with the bargaining agent, the claimant would have been subject to recall to the job of a tool and die maker, in order of his seniority, if the workload increased and it was necessary for the employer to increase the forces of the tool and die makers.

"3.  On or about January 28, 1964, the claimant was offered a job by the Sangamo Electric Company as a tool and die maker paying a wage of $3.50 an hour. The location of this plant is at Walhalla, South Carolina, a distance of approximately one hundred and eighty miles from the claimant's home. The claimant refused the job because of the distance from his residence, and further for the reason that his wife had a job in North Carolina and would be required to separate from that job if they moved their residence to Walhalla, South Carolina.

"4.  During the period the claimant has filed claims for benefits he has actively sought work and has been otherwise able to work."

The Chairman's findings of fact and his "Reasons and Conclusions of Law" were set forth in an order, signed and entered in the name of the Commission by the Chairman, in which it was adjudged that "the claimant shall suffer no disqualification" (1)  because of his separation from Douglas on January 10, 1964, or  (2)  because of a work refusal with Douglas on January 10, 1964, or  (3)  because of a work refusal with Sangamo Electric Company on or about January 28, 1964. It was "further ORDERED, ADJUDGED and DECREED that the claimant is eligible to receive benefits beginning January 27, 1964 and continuing

through February 23, 1964, and shall thereafter be paid or denied benefits in accordance with his claims record."

Douglas excepted and appealed to the superior court where Judge Walker, after hearing, entered judgment affirming the Commission's order and taxing Douglas with the costs. Douglas excepted and appealed.

*Bradley, Gebhardt, DeLaney & Millette for appellant Douglas Aircraft Company, Incorporated.*

*W. D. Holoman, R. B. Overton, R. B. Billings and D. G. Ball for appellee Employment Security Commission of North Carolina.*

BOBBITT, J. The record indicates the Commission's order, from which Douglas appealed to the superior court, constitutes the decision of the Chairman. G.S. 96-4(a) contains this provision: "The chairman of said Commission shall, except as otherwise provided by the Commission, be vested with all authority of the Commission, including the authority to conduct hearings and make decisions and determinations, when the Commission is not in session and shall execute all orders, rules and regulations established by said Commission." Douglas appealed directly to the superior court. Under the circumstances, the decision and order are deemed the decision and order of the Commission. *Employment Security Comm. v. Roberts,* 230 N.C. 262, 52 S.E. 2d 890.

The pertinent facts are established by the Commission's unchallenged findings. No evidence appears in the record before us.

Douglas' only specific exception is to "(t)he failure of the Court to conclude *as a matter of law* that the claimant B. B. Troutman should be disqualified for voluntarily leaving his employment with Douglas Aircraft Company as provided by G.S. 96-14(1)." (Our italics.) Its brief asserts: "Douglas did not except to any findings of fact and therefore the only question involved on this appeal is whether the claimant was discharged or whether he voluntarily left his employment at Douglas. If he voluntarily left his employment, did he do so without good cause attributable to the employer?" The appeal presents no question with reference to claimant's refusal on January 28, 1964 to accept the job in Walhalla, South Carolina.

G.S. 96-14(1), on which Douglas relies, provides that "(a)n individual shall be disqualified for benefits" for not less than four nor more than twelve weeks occurring within a benefit year "if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he left work voluntarily without good cause attributable to the employer . . ."

On January 10, 1964, when *it terminated* claimant's employment as a tool and die maker, Douglas offered claimant a job as an electrical

bench assembler. Claimant's refusal to accept Douglas' offer of a substitute job in a substantially lower job classification in respect of skill and compensation is the sole basis of Douglas' contention that claimant left employment by Douglas voluntarily and without good cause attributable to the employer.

G.S. 96-13 prescribes conditions with which an unemployed individual must comply to be eligible for benefits. G.S. 96-14 sets forth conditions upon which an individual "shall be disqualified for benefits." In *In re Miller*, 243 N.C. 509, 91 S.E. 2d 241, it was held that these statutes, being *in pari materia*, are to be construed together. In *Miller*, it was held that claimant, a member of the Seventh Day Adventist Church, was "available for work" within the meaning of G.S. 96-13 notwithstanding, on account of her conscientious and religious beliefs, she was not available for work from sundown Friday until sundown Saturday. Johnson, J., for this Court, said: "The words, 'available for work,' as used in the statute mean 'available for suitable work' in the same sense as the words, 'suitable work,' are used in the cognate statute, 96-14."

G.S. 96-14(3) provides that "(a)n individual shall be disqualified for benefits" for not less than four nor more than twelve weeks occurring within a benefit year "if it is determined by the Commission that such individual has failed without good cause . . . (ii) to accept suitable work when offered him . . ."

G.S. 96-14(3) also provides: "In determining whether or not any work is suitable for an individual, the Commission shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."

Unless the job of electrical bench assembler, offered by Douglas to claimant on January 10, 1964 was "suitable work" within the meaning of G.S. 96-14, claimant did not voluntarily leave his employment without good cause attributable to the employer.

This proceeding relates solely to benefits for the four weeks beginning January 27, 1964 and continuing through February 23, 1964. After reference to the factors to be considered in determining whether a particular job is suitable work for an individual (G.S. 96-14(3)), and after review of the evidence in relation to these factors, the Commission made these determinations: ". . . an individual with the skill of the claimant should be given a reasonable time within which to seek work in his highest vocation. In view of the differential in pay, the differential in skill required, and the length of the unemployment of the claimant, it is concluded that the claimant's refusal to accept the job

as an electrical bench assembler was with good cause and, therefore, no disqualification should be imposed." The import of the Commission's determinations, decision and order is that a reasonable time for claimant to seek work in his highest vocation extended to and included the period beginning January 27, 1964 and continuing through February 23, 1964.

The precise question before us is whether, upon the unchallenged findings of fact, the job of electrical bench assembler offered by Douglas to claimant on January 10, 1964 was "suitable work" within the meaning of G.S. 96-14 *as a matter of law.* While the question is of first impression in this jurisdiction, well-reasoned decisions in other jurisdictions support the Commission's determinations, decision and order.

In *Pacific Mills v. Director of Division of Employ. Sec.,* 77 N.E. 2d 413 (Mass.), decisions of the administrative board awarding unemployment benefits were upheld. With reference to each of two claims, the issue was "whether the employee is barred from benefits by a refusal to accept work offered by the petitioner as a substitute for that previously performed by the employee." The substitute work offered by the employer was of a lower grade at substantially less wages. The court held that the determination as to whether the substitute work offered was "suitable" was to be made by the administrative board; and that the employer's appeal did not disclose error of law or arbitrary conduct. The following is an excerpt from the opinion of Chief Justice Qua: "Under the present wording of the statute we cannot say that there was error of law in taking into account such matters as the skill and capacity of the worker, his accustomed remuneration, his expectancy of obtaining equivalent employment, and the time which he had had to obtain it. It may reasonably be thought that employment which requires a highly trained and skilled worker, who still has a fair prospect of securing work in his own line, to step down into work of a substantially lower grade at substantially less pay before he has had a chance to look about him is not truly 'suitable.' Acceptance of such employment might conceivably condemn the worker permanently to a scale of employment lower than that to which his training, skill, and industry fairly entitle him. Suitability is not a matter of rigid fixation. It depends upon circumstances and may change with changing circumstances. Employment which may not be suitable while there is still a good present expectancy of obtaining other employment more nearly proportionate to the ability of the worker may become suitable if that expectancy is not realized within a reasonable time."

In *Dubkowski v. Administrator, Unemploy. Comp. Act,* 188 A. 2d 658 (Conn.), the decision of the administrator awarding unemployment benefits was upheld. The employer, upon terminating plaintiffs' employ-

ment in skilled jobs, offered them substitute work of a lower grade at substantially less wages. In upholding the decisions of the administrator that the substitute work offered by the employer was "unsuitable," the court, in opinion by Shea, J., said: "Before work calling for less competence and lower remuneration can be found to be suitable, a claimant is entitled to a reasonable length of time within which to find work at his higher skill. . . . The longer a claimant is unemployed, . . . the more he is obligated to take less desirable work and to make himself available to take it."

In *Bayly Manufacturing Co. v. Department of Emp.*, 395 P. 2d 216 (Colo.), the decision of the administrative board awarding unemployment benefits was upheld. In upholding the administrative decision that the substitute work offered by the employer was "unsuitable," the court, in opinion by Pringle, J., said: "Work which may be deemed 'unsuitable' at the inception of the claimant's unemployment, and for a reasonable time thereafter, because it pays less than his prior earning capacity, may thereafter become 'suitable' work when consideration is given to the length of unemployment and the prospects for obtaining customary work at his prior earning capacity. What is a 'reasonable time' is not rigid and inflexible and it must initially be determined as a question of fact under the peculiar circumstances of each individual case by the appropriate agency." The opinion cites *inter alia* the prior *Pacific Mills* and *Dubkowski* decisions.

In *Hallahan v. Riley*, 45 A. 2d 886 (N.H.), cited in *Dubkowski* and in *Bayly*, the plaintiff, separated from her job as a "mender" on March 11, 1945, refused employment as a "burler," a job involving less skill and less compensation. Plaintiff was allowed unemployment benefits "up to the end of the employment week prior to" May 23, 1945, the date of decision by the Appeal Tribunal, a period of approximately ten weeks. However, the Appeal Tribunal ordered that "she should not be considered eligible if subsequently, without good cause, she refuses to accept work which under present conditions would, after her prolonged period of unemployment, be suitable for her, namely, burling, or any other work which she can readily perform, the conditions of which are not substantially less favorable than those prevailing for similar work within the locality." Plaintiff's appeal was dismissed on the ground the Appeal Tribunal had authority to make said determinations.

The statutory provisions considered in *Pacific Mills, Dubkowski, Bayly* and *Hallahan* are in substantial accord with those in our Employment Security law. We adopt as sound the reasoning underlying these decisions.

Here, the Commission determined in substance that the substitute work offered to claimant by Douglas on January 10, 1964, was not

suitable work within the meaning of G.S. 96-14; that after his separation from Douglas' employment on January 10, 1964, claimant actively sought work as a tool and die maker or substantially similar work; and that a reasonable time to find such work at his higher skill and at higher wages had not expired on February 23, 1964. In our opinion, and we so decide, the undisputed facts afford ample basis for such determinations. They do not, as Douglas contends, establish *as a matter of law* that claimant voluntarily left the employment of Douglas "without good cause attributable to the employer." Whether claimant is entitled to unemployment benefits for any period subsequent to February 23, 1964 is not presented. In this connection, see *In re Steelman,* 219 N.C. 306, 13 S.E. 2d 544.

With reference to the three decisions cited in Douglas' brief: In *Dentici v. Industrial Commission,* 58 N.W. 2d 717 (Wis.), and in *Geobelbecker v. State,* 53 N.J. Super. 53, 146 A. 2d 488, administrative decisions to the effect that the claimants had left the employment voluntarily without good cause were upheld. In *Erie Forge & St. Corp. v. Unemployment Comp. Bd. of R.,* 178 Pa. Super. 348, 115 A. 2d 791, where the claim for unemployment benefits was denied, the opinion of Rhodes, President Judge, states: "The suitability of the work was not involved and the board's finding to that effect is not supported by substantial evidence."

Decisions of the Superior Court of Pennsylvania, apparently in accord with the views approved herein, include: *American Bridge Co. v. Unemployment Comp. Bd. of Review,* 46 A. 2d 510; *Haug v. Unemployment Comp. Bd. of Review,* 56 A. 2d 396; *Neff v. Unemployment Compensation Bd. of Review,* 169 A. 2d 338; *Vogel v. Unemployment Compensation Bd. of Review,* 181 A. 2d 885. See also: *Di Re v. Central Livestock Order Buying Company,* 74 N.W. 2d 518 (Minn.); *Hagadone v. Kirkpatrick,* 154 P. 2d 181 (Idaho); *Broadway v. Bolar,* 29 So. 2d 687 (Ala.).

For the reasons indicated, the judgment of the court below is affirmed.

Affirmed.