ELGIE G. BUNN, CLAIMANT-APPELLANT v. N. C. STATE UNIVERSITY, D. H. HILL LIBRARY AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, RESPONDENT-APPELLEES

No. 8310SC1239

(Filed 16 October 1984)

**Master and Servant § 108— unemployment compensation—leaving work between notice of discharge and formal discharge**

Where claimant was informed by her supervisors after a trial period that her job performance as a library aide was "pitiful," that she was unqualified to do the work as a library aide, and that she would be discharged at the end of the month, and claimant informed the employer that she would not return to work to finish out the month, claimant did not leave work voluntarily or without good cause attributable to her employer and was entitled to unemployment compensation for the time between her notice of discharge and her formal discharge. G.S. 96-14(1).

APPEAL by plaintiff from *Smith, J.* Judgment entered 22 June 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 20 September 1984.

Elgie Bunn was an employee of North Carolina State University from August 1978 until 11 June 1982. She worked as a mail clerk from August 1978 until May 1982. Nearly a year after she began work in the mail room, she developed pain and swelling in her right wrist. This appeared to be due to the strain involved in her work, pushing a mail cart and lifting heavy objects. Although she favored her right hand, the pain persisted. She sought medical help in February 1979, and had a synovial cyst removed from the right wrist joint. She returned to the mail room. In April 1982 plaintiff injured her wrist, and had to have another operation to remove a ganglion cyst. Two months later, her doctor told her she could return to work but cautioned her to avoid straining her

right hand, and told her only to lift and push heavy objects as she felt able. She requested a transfer to another job, even though her hand was not completely healed. Her supervisor told her that due to the hiring freeze, no work was available except in the mail room. Later, her supervisor informed her that a temporary part-time position was available at the library circulation desk. Plaintiff accepted the job and gave it her best. Yet, about one and one-half weeks after she began, she was told by her supervisors that she was not qualified for the job, i.e., that her on-the-job test results were "pitiful," that she worked slowly, and that her spelling was poor. On hearing this, she became emotionally upset. She requested to be able to finish the week. Her supervisors told her she could finish the month. Because her supervisors told her she was so unqualified for the position as library aide, she "lost her confidence" and over the weekend decided she could not return to her job. She called one of her supervisors and told him she did not wish to return. He requested that if she was not coming back that she send a note resigning her position as a mail clerk so that when the hiring freeze was over he could hire someone. She did this.

Plaintiff filed for unemployment benefits on 13 June 1982 for the period 13 June-19 June 1982. Her request was denied by an Appeals Referee and by the Employment Security Commission. The plaintiff then appealed to the Superior Court of Wake County, which affirmed the decision of the Employment Security Commission. Plaintiff now appeals the decision of the Superior Court.

*Kathryn S. Aldridge for appellee Employment Security Commission of North Carolina.*

*East Central Community Legal Services, by Victor J. Boone, for plaintiff appellant.*

ARNOLD, Judge.

The plaintiff, Elgie G. Bunn, claims that the Wake County Superior Court erred in affirming a determination of the Employment Security Commission (ESC) that she was disqualified from receiving unemployment benefits for the period 13 June-19 June 1982. Ms. Bunn argues that the ESC made incorrect findings of fact and that the ESC improperly applied the law, G.S. 96-14(1), to

the facts as found. Because she failed to make timely and particular objections to the ESC's findings of fact, Ms. Bunn has failed to preserve exceptions to those findings for our review. *See In re Hagan v. Peden Steel Co.*, 57 N.C. App. 363, 364, 291 S.E. 2d 308, 309 (1982); *Hoover v. Crotts*, 232 N.C. 617, 61 S.E. 2d 705 (1950). The scope of our inquiry, then, is limited to determining whether the ESC and the Superior Court correctly interpreted the law and properly applied it to the facts as found. In other words, we must say whether the ESC's findings of fact, in light of the applicable law, support its determination.

The legal question we face is how to construe the "voluntary quit" provision of the Employment Security Law, G.S. 96-14(1), which disqualifies from unemployment benefits any person "unemployed because he left work voluntarily without good cause attributable to the employer." In the case at bar, this question becomes whether G.S. 96-14(1) disqualifies a person, like Ms. Bunn, who has left work between her "notice of discharge" and the date on which she is formally discharged. We note that in this case Ms. Bunn only claims benefits for this period, and not for the period after her final discharge date.

We recently considered the "voluntary quit" provision in *Eason v. Gould, Inc.*, 66 N.C. App. 260, 311 S.E. 2d 372 (1984), a case involving an employee who left work after hearing from fellow employees that she would be laid off due to a "slow down" at the plant where she worked. In *Eason*, this court determined that the claimant was entitled to benefits after the effective lay-off date, but not before. In the case at bar, the claimant, after a trial period, was informed by her supervisors that she was not capable to do the work as a library aide and that she accordingly was to be discharged at the end of the month. She "lost her confidence" and informed her employer that she would not work through the last possible day. There are significant differences between the facts of this case and the facts of *Eason*, and therefore we undertake a fresh analysis.

Our interpretation of G.S. 96-14(1) is guided by a special rule of construction: that the disqualification rules be applied strictly in favor of the claimant. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968). This rule stems from the legislative policy behind the Employment Security Law, conceived during the Great Depres-

sion of the 1930's, to provide support for persons who are able and willing to work, but who have become unemployed because of conditions of their former employment, and who continue to be unemployed because of generally depressed labor market conditions in their community. *See* G.S. 96-2. The meaning of this rule of construction and the policy behind it is that where a statutory term is vague, and the claimant is arguably covered, the claimant should be given the benefit of the doubt.

Section 96-14(1) provides that for Ms. Bunn to have been disqualified she must have left work "voluntarily." The definition of "voluntarily" is:

1. Of one's own free will or accord; without compulsion, constraint, or undue influence by others; freely, willingly.

2. *Without other determining force than natural character or tendency; naturally, spontaneously.*

3. At will, at pleasure; extempore.

Oxford English Dictionary (emphasis added). *See also* Webster's New International Dictionary (2d ed.).

Although Ms. Bunn did have to make the ultimate choice not to return to work, still we cannot say that her decision was entirely free, or spontaneous. We agree with the court in *Dept. of Labor and Industry v. Unemployment Compensation Board of Review (In Re John Priest)*, 133 Pa. Super. 518, 3 A. 2d 211 (1938), that an individual's decision to leave work when informed of an imminent discharge or layoff is a consequence of the employer's decision to discharge and is not wholly voluntary.

Yet, even if voluntary, Ms. Bunn's decision to leave would not disqualify her if she acted with "good cause attributable to [her] employer." "Good cause" has been defined as a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work. *See In re Clark*, 47 N.C. App. 163, 266 S.E. 2d 854 (1980). "Attributable to the employer" in G.S. 96-14(1) means "produced, caused, created or as a result of actions" by the employer. *In re Vinson*, 42 N.C. App. 28, 31, 255 S.E. 2d 644, 646 (1979).

In the case *In re Clark*, 47 N.C. App. 163, 266 S.E. 2d 854 (1980), this court found that an employee's decision to leave work

on ethical grounds was with "good cause attributable to the employer." The claimant in that case was a social worker who had induced two clients to sign Boarding Home Agreements to place their children in the temporary care of other people by assuring them that no custody proceedings would occur and that their children could return to them later. These arrangements were consistent with previous department policy. The social worker's supervisor, however, then instructed her to initiate custody proceedings, even though she had assured the clients that this would not occur. The social worker, because of these incidents, felt she could not ethically continue her employment, and resigned. This court found that the social worker left with good cause attributable to the employer. Moreover, it rejected the ESC arguments, that the social worker failed to try to resolve the conflict, as irrelevant, *citing In re Werner*, 44 N.C. App. 723, 263 S.E. 2d 4 (1980).

If in *Clark* a person who felt she was not able to perform her work because of an ethical dilemma had good cause to leave, then surely Ms. Bunn, who lost confidence and felt she could not continue her work because her employer informed her she was not qualified to do the work, also had good cause to leave. Reasonable men and women, placed in Ms. Bunn's position, and exposed to the humiliation and embarrassment of knowing that supervisors and co-workers regarded their work as "pitiful," would reasonably seek other work. Ms. Bunn's decision to leave, once notified that she was discharged, did not reflect an unwillingness to work and be self-supporting, or to live in compensated idleness.

Our conclusion that Ms. Bunn acted reasonably is reinforced by our belief that, if Ms. Bunn was not disqualified from benefits under G.S. 96-14(1), the ESC would have approved her refusal to accept work like the library aide job on the ground of "unsuitability" under G.S. 96-14(3). If, once she is unemployed and receiving benefits, such a job is not "suitable," and refusing it will not stop her benefits, why must her refusal to continue at it, after she has been told she is not qualified to do it, prevent her from receiving benefits in the first place? If we find that Ms. Bunn cannot receive benefits now, but that she can continue to get them later, on refusing this type of job, then we create a logical inconsistency in the construction of the act. *See* K. Kempfer, Dis-

qualifications for Voluntary Leaving and Misconduct, 55 Yale L. J. 147, 155-56 (1945) and cases cited therein.

Thus, we hold that when Ms. Bunn was told that she was discharged because she was not qualified for her work but was allowed to stay on for a short period, she should not be disqualified from receiving benefits under G.S. 96-14(1) where she left work after her date of notice but in advance of the last possible day she could work.

The ESC's findings do not persuade us that Ms. Bunn could have pursued other alternatives at North Carolina State. The ESC's findings on Ms. Bunn's medical condition, and on her resignation of her job as mail clerk, are insufficient to support its conclusion that she could have returned to that job. The ESC found that: Ms. Bunn "believed she was physically unable to return to this job [as mail clerk]. There is no medical documentation that she was physically unable to work as a mail clerk on June 25, 1982." The lack of medical records attesting that she was "physically unable" as of 25 June 1982, is not of itself sufficient to determine the question of whether reasonable men and women would have good cause to leave the mail clerk position because it posed a threat to health or safety.

The ESC made no other findings as to job availability in the North Carolina State community at the time Ms. Bunn sought a transfer from her mail clerk position, at the time she left her position as library aide, or at the time of her formal resignation from the mail clerk position. There are insufficient findings of fact, therefore, to support its arguments that Ms. Bunn could have found other work at North Carolina State.

The Employment Security Law is designed to provide for the general welfare of North Carolina citizens. In a case like this, where an employee is discharged and leaves a few days in advance of her final work day, we do not believe that the law is so harsh that it would deny her benefits, either before or after the formal date of discharge. The principle that we should construe the disqualification provisions to the benefit of the claimant only reinforces our feeling that G.S. 96-14(1) was not intended to bar Ms. Bunn from the benefits she claims.

Reversed and remanded.

Judges WELLS and HILL concur.