IN THE MATTER OF: JOHN H. POTEAT v. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA AND LEON GILLIAM & SONS, INC.

No. 514PA86

(Filed 4 March 1987)

**Master and Servant § 108— unemployment compensation—leaving work before termination date**

An employee who quits a job upon being informed that he will be terminated four days later, and who applies immediately for unemployment benefits, is disqualified for such benefits for the four-day period during which he could have continued to work on the ground that he is "unemployed because he left work voluntarily without good cause attributable to the employer." Nothing else appearing, however, he is not thereby disqualified subsequent to the date on which his employment would in any event have terminated.

ON discretionary review pursuant to N.C.G.S. 7A-31 from a decision of the Court of Appeals, 82 N.C. App. 138, 349 S.E. 2d 597 (1986), vacating judgment entered by *Walker (Hal H.), J.,* on

12 November 1985 in Superior Court, ALAMANCE County, and remanding for entry of an order remanding to the Employment Security Commission for an award of benefits. Heard in the Supreme Court 10 February 1987.

*North State Legal Services, Inc., by Carlene M. McNulty, for claimant-appellee.*

*T. S. Whitaker, Chief Counsel, and Thelma M. Hill, Staff Attorney, for the Employment Security Commission of North Carolina, appellant.*

WHICHARD, Justice.

The issue is whether an employee who quits a job upon being informed that he will be terminated four days later, and who applies immediately for unemployment benefits, is thereby disqualified for such benefits on the ground that he is "unemployed because he left work voluntarily without good cause attributable to the employer." N.C.G.S. 96-14(1). We hold that the employee is disqualified for the four-day period during which he could have continued to work. Nothing else appearing, however, he is not thereby disqualified subsequent to the date on which his employment would in any event have terminated. We thus affirm the holding of the Court of Appeals "that [N.C.]G.S. 96-14(1) does not bar claimant from receiving benefits" insofar as it applies to the period subsequent to the date on which claimant's employment would in any event have terminated. We reverse the holding, however, insofar as it applies to the period from the date claimant voluntarily quit through the date on which his employment would otherwise have terminated. As to the period after claimant's employment would in any event have terminated, for reasons hereinafter set forth we direct a remand to the Employment Security Commission for a determination as to whether claimant is disqualified for benefits on any statutory ground other than that he was "unemployed because he left work voluntarily without good cause attributable to the employer."

On Monday, 13 May 1985, claimant, a truck driver and mechanic employed by respondent-employer, was told by his supervisor that he needed to look for another job, but that he could work until the following Friday, 17 May 1985. Claimant left work at noon on 13 May 1985 and filed a claim for unemployment bene-

fits that afternoon. An adjudicator for the Employment Security Commission concluded that claimant had voluntarily quit without good cause attributable to the employer and was thus disqualified for benefits under N.C.G.S. 96-14(1), which provides:

> An individual shall be disqualified for benefits:
>
> (1) For the duration of his unemployment beginning with the first day of the first week after the disqualifying act occurs . . . if it is determined by the Commission that such individual is, *at the time such claim is filed,* unemployed because he left work voluntarily without good cause attributable to the employer.

N.C.G.S. 96-14(1) (1985) (emphasis supplied). Subsequent decisions by an appeals referee and by the Chief Deputy Commissioner reached the same conclusion. Claimant petitioned the Superior Court, Alamance County, for judicial review, and the Superior Court affirmed the Commission.

The Court of Appeals, however, vacated the judgment of the superior court. It recognized that N.C.G.S. 96-14(1) disqualifies a claimant for benefits when it is shown that he left work voluntarily *and* without good cause attributable to the employer, but held that the first prong of this test had not been met because claimant had not left work "voluntarily" as defined in *Bunn v. N.C. State University,* 70 N.C. App. 699, 321 S.E. 2d 32 (1984), *disc. rev. denied,* 313 N.C. 173, 326 S.E. 2d 31 (1985).

In *Bunn* the claimant was told she would be discharged because she was not qualified for her job. Like the claimant here, she ceased work before the effective date of her discharge. The court found that this departure was involuntary because it was motivated by the notice of discharge and, as such, it was not "entirely free, or spontaneous." *Bunn,* 70 N.C. App. at 702, 321 S.E. 2d at 34. The court concluded "that an individual's decision to leave work when informed of an imminent discharge or layoff is a consequence of the employer's decision to discharge and is not wholly voluntary." *Id.,* 321 S.E. 2d at 34.

Notice to the claimant in *Bunn* was exacerbated by the employer's description of the claimant's work as "pitiful." The Court of Appeals held that, even if the decision of the claimant there to leave work was "voluntary," the humiliation and embar-

rassment she suffered vitiated the second prong of the statutory test, *i.e.*, that claimant had quit without good cause attributable to the employer.

The reasoning in *Bunn* was predicated on its discrete facts. First, although the *Bunn* court held that the claimant's unemployment was "not wholly voluntary" because it was a response to a notice of discharge, it is evident that the offensive nature of the notice colored the court's determination as to the first prong of the test. Second, the court was influenced by the grounds for the claimant's discharge. It would be logically inconsistent, the court reasoned, to deny benefits because the claimant refused to continue at a job that was not "suitable" for her when benefits would *remain* available if she were already unemployed but refused an offer of an unsuitable job. *Id.* at 703, 321 S.E. 2d at 35. *See* N.C.G.S. 96-14(3).

The facts here are distinguishable from the singular circumstances in *Bunn*. The Commission's findings of fact, to which no exception is taken, include the following:

> 2. The claimant left this job under the following circumstances: About three (3) weeks before his last day of work, the employer had walked through the plant and said "he might let somebody go, he'd let somebody know to start with." Due to personal illness and court activities due to child support responsibilities of his, the claimant had missed some work. Because of his missing work and not being dependable for regular work, on his last day of work the employer told him that he could be looking for another job, but he could work until Friday, May 17, 1985. When his request for a lay-off slip was denied, he worked until noon and left to look for another job, and also filed a claim for unemployment insurance benefits.

> 3. When the claimant left the job on Monday, May 13, 1985, continuing work was available for the claimant there until Friday, May 17, 1985.

Nothing in these findings suggests that notice of impending termination was so offensive as to embarrass or humiliate the claimant here, as it did the claimant in *Bunn*. Further, suitable work was available for claimant for the remainder of the week in which

he received the notice. Had he already been unemployed and receiving benefits, the refusal of available, suitable work would have rendered him disqualified for further benefits. N.C.G.S. 96-14(3). We thus do not find the reasons in *Bunn* persuasive when applied to the facts here.[1]

The facts of *Eason v. Gould, Inc.*, 66 N.C. App. 260, 311 S.E. 2d 372 (1984), *aff'd per curiam without precedential value*, 312 N.C. 618, 324 S.E. 2d 223 (1985), more closely parallel those here. In *Eason* the claimant was told she would be laid off in two weeks due to a "slow-down" at work. She left work immediately and filed for benefits. In interpreting the first prong of N.C.G.S. 96-14(1) (voluntary quit), the *Eason* court cited several Court of Appeals cases that it said "teach that an employee has not left his job voluntarily when events beyond the employee's control or the wishes of the employer cause the termination." *Id.* at 262, 311 S.E. 2d at 373. This characterization of voluntariness, unlike the less generally applicable definition in *Bunn* which focuses on the employee's state of mind, more appropriately focuses on the external factors motivating the employee's quit.

If an employee's quit is found to be voluntary, the second prong, the "good cause" element of the test under N.C.G.S. 96-14 (1), must also be addressed. This Court has defined "good cause" as "a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E. 2d 357, 359 (1982). Guided by a similar interpretation of the "good cause" prong derived from its assessment of prior Court of Appeals cases, the *Eason* court held that the claimant there was voluntarily unemployed without good cause attributable to the employer for the two-week period prior to the effective date of the layoff. Recent legislation has in effect ratified this interpretation. The General Assembly has amended N.C.G.S. 96-14(1) to provide that "[w]here an employer notifies an employee that such employee will be separated on some definite future date for lack

---

1. By thus distinguishing *Bunn*, we intend neither approval nor disapproval of its result. In such cases arising on and after 1 July 1985, the amended version of N.C.G.S. 96-14(1) will bar recovery for the period between the claimant's voluntary quit and the time the employment would in any event have terminated. *See* 1985 N.C. Sess. Laws ch. 552, sec. 12, eff. 1 July 1985.

of available work, the impending separation does not constitute good cause for quitting that employment . . . ." 1985 N.C. Sess. Laws ch. 552, sec. 12, eff. 1 July 1985. Because of its effective date, this provision is inapplicable here. We nevertheless find it instructive in ascertaining legislative intent.

Guided by this indication of legislative intent, and convinced that it represents sound public policy which accords with the spirit and intent of the Act,[2] we hold that claimant is disqualified for benefits for the four-day period during which he could have continued to work for respondent-employer. The decision of the Court of Appeals is thus reversed insofar as it mandates an award of benefits to claimant for that period.

As to the period after the date on which claimant's employment would in any event have terminated, however, we affirm the holding of the Court of Appeals that "[N.C.]G.S. 96-14(1) does not bar claimant from receiving benefits." While N.C.G.S. 96-14(1) sets "the time such claim is filed" as determinative in assessing disqualification thereunder, and the claim here was filed during the period when we have held claimant to be disqualified, we agree with the *Eason* court that "there is no provision preventing consideration of a claimant's application after the effective date of a termination." *Eason v. Gould, Inc.*, 66 N.C. App. at 263, 311 S.E. 2d at 374. "[T]he decisions are legion in which [courts] have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute." *Cabell v. Markham*, 148 F. 2d 737, 739 (2d Cir. 1945) (Learned Hand). The express purpose of the Employment Security Law is to "benefit . . . persons unemployed through no fault of their own." N.C.G.S. 96-2 (1985). "[T]he statute must be construed so as to provide its benefits to one who becomes involuntarily unemployed . . . ." *In re Watson*, 273 N.C. 629, 633, 161 S.E. 2d 1, 6 (1968). "[S]ections of the act imposing disqualifications for its benefits should be strictly construed in favor of the claimant . . . ." *Id.* at 639, 161 S.E. 2d at 10.

Insofar as the findings before us establish, claimant here was, after 17 May 1985, involuntarily unemployed through no fault of

---

2. The Act provides that "unemployment reserves [are] to be used for the benefit of persons unemployed through no fault of their own." N.C.G.S. 96-2 (1985). With regard to the four-day period in which claimant could have continued to work, it cannot be said that he was "unemployed through no fault of [his] own."

his own. He thus was within the class the statute was designed to benefit, and to construe the statute literally so as to deny benefits solely by virtue of the time claimant filed his claim would be inconsistent with the spirit and intent of the Act. We thus hold that, nothing else appearing, claimant is entitled to benefits after 17 May 1985 when he was involuntarily unemployed through no fault of his own. The opinion of the Court of Appeals is affirmed insofar as it so holds.

For cases from other jurisdictions reaching the same result, see the following: *Johnston v. Florida Department of Commerce*, 340 So. 2d 1229, 1230 (Fla. Dist. Ct. App. 1976) ("In a case [in which an employee, faced with notice of discharge, has decided to leave before the effective termination date], the period of voluntary unemployment is that portion of the notice period (the notice period being the time, if any, between notice of discharge and actual discharge) during which the employee chooses not to work. The employee is ineligible to receive unemployment benefits during the notice period, for he could continue on the job if he wished. The period of involuntary unemployment begins with the date which the employer designated as the termination date when it gave the employee notice."); *McCammon v. Yellowstone Co., Inc.*, 100 Idaho 926, 928-29, 607 P. 2d 434, 436-37 (1980) ("If the purpose of the Act is to promote economic security and to provide benefits during periods of economic unemployment, such purpose is frustrated by a finding that, because an employee voluntarily left his employment prior to an effective firing date, that such leaving prevents the claimant from ever becoming eligible for benefits as of the date he became involuntarily unemployed. We do not so read the statutes and hereby declare that after an otherwise eligible employee has been fired but voluntarily terminates his employment prior to the effective firing date, his eligibility for receipt of unemployment benefits is not affected following the termination."); *Carlson v. Job Service North Dakota*, 391 N.W. 2d 643, 646-47 (N.D. 1986) ("Generally, an employee who quits instead of waiting for discharge should receive benefits from the date the discharge would have taken place, unless the employer creates good cause for leaving at an earlier date. . . . During [the five week period between claimant's notice and the effective date of her discharge], [claimant] was voluntarily unemployed without good cause and therefore, should

In re Poteat v. Employment Security Comm.

be paid compensation only for unemployment [beginning five weeks after the quit].").

We agree with the Commission, however, that the Court of Appeals incorrectly held that this determination mandates an award to claimant. The record indicates that there may be "an alternative basis in law" upon which a judgment favorable to the Commission might be supported, *viz,* "misconduct" (N.C.G.S. 96-14(2)) or "substantial fault" (N.C.G.S. 96-14(2A)) on the part of the claimant. The Commission thus is entitled to a remand for findings on these issues. *In re Cianfarra v. Dept. of Transportation,* 306 N.C. 737, 295 S.E. 2d 457 (1982) (vacating and remanding *per curiam* 56 N.C. App. 380, 289 S.E. 2d 100, in effect adopting the reasoning of the dissent therein). The decision of the Court of Appeals is thus reversed insofar as it mandates an award to claimant for the period subsequent to 17 May 1985 rather than remanding for a determination of whether claimant is disqualified under other provisions of the Employment Security Law.

In summary, the decision of the Court of Appeals is (a) reversed insofar as it holds that claimant is entitled to benefits for the period from 13 May 1985-17 May 1985, (b) affirmed insofar as it holds that claimant is not disqualified for benefits for the period subsequent to 17 May 1985 by virtue of the provisions of N.C.G.S. 96-14(1), and (c) reversed insofar as it mandates an award of benefits to claimant for the period subsequent to 17 May 1985. The cause is remanded to the Court of Appeals with instructions to remand to the Superior Court, Alamance County for further remand to the Employment Security Commission. The Commission shall, upon remand, enter appropriate findings and conclusions determining whether claimant is disqualified for benefits for the period subsequent to 17 May 1985 under provisions of the Employment Security Law other than N.C.G.S. 96-14(1). Unless the Commission finds claimant thus disqualified, it shall enter an appropriate award consistent with this opinion.

Affirmed in part, reversed in part, and remanded.