ETTA COUCH v. NORTH CAROLINA EMPLOYMENT SECURITY COMMIS-
SION, AND KID'S WORLD

No. 8715SC869

(Filed 5 April 1988)

1. **Master and Servant § 108— unemployment compensation—reduction of work hours—voluntary quit**

    Claimant voluntarily left her employment as a cook where she quit because the employer reduced her hours and it became economically unfeasible for her to continue working in that job.

**2. Master and Servant § 108— unemployment compensation—substantial reduc-
tion of work hours—good cause attributable to employer**

>    An employer's substantial reduction of an employee's working hours may
> constitute good cause attributable to the employer for leaving the employment
> for the purpose of determining whether the employee is entitled to unemploy-
> ment compensation benefits. However, what constitutes a substantial reduc-
> tion in a claimant's working hours is a factual determination best left for the
> trier of fact, and this case is remanded for further proceedings to determine
> whether the reduction of claimant's working hours as a cook from five to three
> hours per day, in light of the attendant facts and circumstances, was a
> substantial reduction sufficient to qualify as good cause attributable to the
> employer.

>    Judge GREENE dissenting.

APPEAL by claimant from *Hobgood (Robert), Judge.* Judg-
ment entered 25 June 1987 in Superior Court, ORANGE County.
Heard in the Court of Appeals 4 February 1988.

Kid's World (employer) employed Etta Couch (claimant) as a
cook at its day care facility for approximately five months prior
to her leaving her position. Claimant testified that she worked
five hours per day five days a week. Sometime in December 1986
employer reduced claimant's hours to three hours per day. Her
hourly wage did not change. Claimant determined that she could
no longer afford to work only three hours per day for approxi-
mately $4.50 per hour and quit her position. Her final work day
was 29 December 1986. Claimant filed this claim for unemploy-
ment compensation benefits on 18 January 1987.

On 2 February 1987 an Employment Security Commission
(ESC) adjudicator denied claimant's application for unemployment
compensation benefits. Claimant appealed and the case was heard
by an appeals referee. On 9 March 1987 the referee found that
claimant voluntarily quit her position without good cause attribu-
table to her employer and disqualified claimant from receiving
any benefits. Claimant appealed to ESC. ESC affirmed and
adopted the referee's decision stating that a "reduction of hours
does not give good cause for voluntarily leaving a job." On 25
June 1987 the trial court affirmed the Commission's decision de-
nying claimant's application. Claimant appeals.

*North State Legal Services, Inc., by John L. Saxon for claimant-appellant.*

*No brief filed for Kid's World, appellee.*

*T. S. Whitaker, Chief Counsel, and Thelma M. Hill, Staff Attorney, for the Employment Security Commission of North Carolina, appellee.*

EAGLES, Judge.

The sole issue for our review is whether claimant has left her employment as a cook with Kid's World voluntarily without good cause attributable to her employer. Specifically, we must decide two questions: whether claimant left her job voluntarily and whether a reduction in her work hours constitutes "good cause attributable to the employer."

Initially we note that where, as here, appellant fails to except to the findings of fact, our review is limited to whether ESC and the court below correctly interpreted the law and correctly applied the law to the facts found. *Bunn v. N.C. State University,* 70 N.C. App. 699, 321 S.E. 2d 32 (1984), *disc. rev. denied,* 313 N.C. 173, 326 S.E. 2d 31 (1985). Here the referee found that:

1. Claimant last worked for Kids [sic] World on December 29, 1986. From January 18, 1987 until January 24, 1987, claimant has registered for work and continued to report to an employment office of the Commission and has made a claim for benefits in accordance with G.S. 96-15(a) as of the time the Adjudicator, Helen DeBerry, issued a determination which disqualified the claimant for unemployment benefits. The claimant filed a NIC claim effective January 18, 1987. The claimant's weekly benefit amount is $87.00. The claimant's maximum benefit amount is $1,479.00.

2. The claimant appealed the Adjudicator's determination and an evidentiary hearing was scheduled for March 3, 1987 before Jo Ann Weaver, Appeals Referee. The following individuals were present at the hearing: the claimant. The employer requested a continuance for business reasons. The continuance was denied.

3. Claimant left this job because her hours were cut and she did not feel that her pay justified the commute.

4. When claimant left the job, continuing work was available for claimant there.

5. The claimant originally worked five hours a day, five days a week.

6. The claimant's hours were cut to three hours a day for five days a week in December of 1986.

7. The claimant was paid an hourly rate.

8. The claimant lived approximately eight miles from her place of employment.

These facts are binding on appeal when, as here, there is competent evidence to support the findings. *In re Cantrell*, 44 N.C. App. 718, 263 S.E. 2d 1 (1980). The referee's conclusions of law, as well as the conclusions of ESC, are fully reviewable. *See id.*

The trial court held "that the Employment Security Commission properly applied the law to [the] facts and the decision rendered was in accordance with the Employment Security Law." More specifically, ESC had concluded as a matter of law that a "reduction of hours does not give good cause for voluntarily leaving a job."

In its determination ESC relied upon G.S. 96-14(1) which, in pertinent part, states:

An individual shall be disqualified for benefits:

(1) For the duration of his unemployment . . . if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he left work *voluntarily without good cause attributable to the employer.* [Emphasis added.]

Our Supreme Court has construed this provision to mean that a claimant is disqualified from receiving unemployment compensation only if he voluntarily left his position and the leaving was without good cause attributable to the employer. *In re Poteat v. Employment Security Comm.*, 319 N.C. 201, 353 S.E. 2d 219 (1987).

[1] We first address whether claimant's quit was voluntary. Neither the referee's decision nor ESC's decision spoke to this issue. Claimant argues that she was forced to quit because her

employer reduced her hours and it became economically unfeasible for her to continue working there. We hold that claimant's quit was voluntary.

In *In re Poteat* the Supreme Court in discussing voluntary termination, quoted *Eason v. Gould*, 66 N.C. App. 260, 311 S.E. 2d 372 (1984), *aff'd per curiam by equally divided court*, 312 N.C. 618, 324 S.E. 2d 223 (1985), "an employee has not left his job voluntarily when events beyond the employee's control or the wishes of the employer cause the termination." *In re Poteat*, at 205, 353 S.E. 2d at 222. The court indicated that a review of voluntariness must focus on the "external factors motivating the employee's quit." *Id.*

Here claimant was not asked to resign nor was she told that she would be discharged within a few weeks. This Court has previously ruled that in those factual circumstances an employee's quit would not be considered voluntary. *Eason, supra; In re Werner*, 44 N.C. App. 723, 263 S.E. 2d 4 (1980). Instead, this employer made a conscious unilateral business decision which directly affected claimant and changed the working conditions under which she was initially employed. The employer's decision to reduce claimant's working hours, however, did not terminate her employment. In fact, the referee found that when claimant left her position, there was continuing work available at Kid's World. Furthermore, the record does not indicate that the employer's actions were an attempt to induce claimant to quit. Claimant's decision to leave her employment was not made under compulsion or coercion, but rather was a knowing, conscious response to the employer-imposed reduction in her working hours. Accordingly, we hold that claimant voluntarily quit her employment.

[2]  G.S. 96-14(1) disqualifies this claimant for benefits only if it can be shown that she voluntarily quit *and* that the quit was without good cause attributable to the employer. *In re Poteat*, 319 N.C. at 203, 353 S.E. 2d at 221. Our Supreme Court has defined "good cause" as "a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E. 2d 357, 359 (1982). Additionally, "attributable to the employer" has been defined as "produced, caused, created or

as a result of actions by the employer." *In re Vinson*, 42 N.C. App. 28, 31, 255 S.E. 2d 644, 646 (1979). The facts here show that the employer created these circumstances by his decision to reduce claimant's working hours. The question, then, is whether a reduction in hours under these facts and circumstances would be deemed by reasonable men and women to be good cause to voluntarily quit. Our research discloses no North Carolina decision on this issue.

The majority rule among those states which have addressed this specific issue is that a substantial reduction in pay or hours worked may be good cause attributable to the employer so that the claimant is not disqualified as a matter of law from receiving unemployment benefits. In *Bunny's Waffle Shop v. California Employment Com'n.*, 24 Cal. 2d 735, 151 P. 2d 224 (1944), San Francisco area restaurant owners unilaterally reduced the wages of their respective employees in a union dispute. Some employees quit their jobs because of this unilateral reduction in their wages. The employers brought the case before the California Supreme Court and described it as involving "workers who left their jobs because their employers substantially reduced wages and imposed less favorable conditions of work." *Id.* at 739, 151 P. 2d at 226. After addressing the specific union issues, the court addressed whether the employee-claimants left work voluntarily without good cause. Justice Traynor noted that "[a] substantial reduction in earnings is generally regarded as good cause for leaving employment." *Id.* at 743, 151 P. 2d at 228.

A Louisiana court also concluded that substantial reductions in pay could be regarded as good cause for leaving employment. *Robertson v. Brown*, 139 So. 2d 226 (La. App. 1962). That court concluded that any other result would allow an employer to prevent any employee from receiving unemployment benefits by simply reducing the employee's wages or hours rather than discharging them outright. The court reasoned that while a substantial pay or work reduction would compel the normal, reasonable employee to leave his job, it would at the same time make him ineligible for any unemployment benefits.

A number of other foreign jurisdictions follow this general rule. *Tombigbee Lightweight Aggreg. Corp. v. Roberts*, 351 So. 2d 1388 (Ala. Civ. App. 1977) (reduction in earnings from minimum

of $165 per week to maximum of $130 per week was good cause for leaving employment); *Kyle v. Beco Corp.*, 109 Id. 267, 707 P. 2d 378 (1985) (wage cut from $7.50 per hour to $3.35 per hour could be good cause for leaving employment); *Keystone Consol. Ind. v. Illinois Dept. of Labor*, 37 Ill. App. 3d 704, 346 N.E. 2d 399 (1976) (reductions in wages of 30% to 47% can be good cause); *International Spike, Inc. v. Ky. Unemployment Ins.*, 609 S.W. 2d 374 (Ky. App. 1980) (salary reductions of 21% and 32% resulting from transfer within the plant produced circumstances compelling quit); *Boucher v. Maine Employment Sec. Com'n.*, 464 A. 2d 171 (Me. 1983) (unilateral 66.5% reduction in pay after recall from layoff was good cause); *Scott v. Photo Center, Inc.*, 306 Minn. 535, 235 N.W. 2d 616 (1975) (per curiam) (25% pay cut gave claimant good cause to quit employment); *Tate v. Mississippi Employment Sec. Com'n.*, 407 So. 2d 109 (Miss. 1981) (claimant whose work hours were reduced approximately 50% to below what it would cost claimant for child care had good cause to voluntarily leave); *Armco Steel Corp. v. Labor & Indus. Rel. Com'n.*, 553 S.W. 2d 506 (Mo. App. 1977) (demotion and resulting pay reduction of 44% gave claimant good cause to leave); *Johns-Manville Prod. Corp. v. Board of Review, Etc.*, 122 N.J. Super. 366, 300 A. 2d 572 (1973) (per curiam) (wage reduction from $4.27 an hour to $3.35 an hour was good cause); *Edwards v. Commonwealth, Unemp. Comp. Bd. of Rev.*, 35 Pa. Commw. 647, 387 A. 2d 510 (1978) (50% reduction in wages); *LaRose v. Department of Employment Sec.*, 139 Vt. 513, 431 A. 2d 1240 (1981) (wage cut of 40% gave claimant just cause attributable to his employer to leave employment); *Brewster v. Rutledge*, 342 S.E. 2d 232 (W. Va. 1986) (per curiam) (claimant whose pay rate decreased from $3.35 an hour to $2.25 an hour with an increase in job responsibilities did not quit without good cause).

ESC argues that enactment of G.S. 96-12(c) authorizing payment of partial benefits to persons partially unemployed as defined in G.S. 96-8(10)b.2 requires that this claimant be disqualified from receiving any unemployment benefits. ESC argues that to hold otherwise would reduce the partial benefits provisions in G.S. 96-12(c) and G.S. 96-8(10)b.2 to "mere surplusage." We disagree.

Affirming the ESC on this record would leave employees whose employers had reduced their employees' wages or hours by

up to 40% without unemployment benefits. This logic totally discounts the fact that to continue on a job under reduced hours or wages, might not be economically feasible for the affected employee. *See Robertson, supra.* We do not believe this was the General Assembly's intent.

The General Assembly has stated the policy of this State is that the compulsory reserves required under the Employment Security Law "be used for the benefit of persons unemployed through no fault of their own." G.S. 96-2. In order to carry out the intent of the act its provisions should be liberally construed in favor of applicants. *Eason, supra.* By contrast, our courts have said that "sections of the act imposing disqualifications for its benefits should be strictly construed in favor of the claimant and should not be enlarged by implication." *In re Watson,* 273 N.C. 629, 639, 161 S.E. 1, 10 (1968). Here, because this claimant's hours were not reduced to the extent that she would have "worked less than three customary scheduled full-time days" per week, she would not have been eligible for partial unemployment compensation. G.S. 96-8(10)b.2. Consequently, the question here is whether the employer's unilateral reduction in this claimant's working hours constitutes good cause to quit her employment for purposes of the Employment Security Law. We hold that a unilateral, substantial reduction in one's working hours by his employer may permit a finding of good cause attributable to the employer. Accordingly, the claimant here is not disqualified as a matter of law from receiving unemployment compensation benefits.

However, what constitutes a substantial reduction in claimant's working hours is a factual determination best left for the trier of fact. In making its determination the fact-finder should consider the individual circumstances peculiar to each claimant. The amount of the reduction in wages or hours is but one factor in the fact-finder's decision making process. Here the facts found by the appeals referee, affirmed and adopted by the ESC, are not sufficient to conclude that this claimant's reduction in hours was not substantial. Accordingly, we vacate the order of the Employment Security Commission and remand the case for further proceedings to determine whether the reduction in working hours in this case, in light of all attending facts and circumstances, was a "substantial reduction" sufficient to qualify as "good cause attributable to the employer." *See* Annotation, *Unemployment Com-*

*pensation: Eligibility as Affected by Claimant's Refusal to Work at Reduced Compensation*, 95 A.L.R. 3d 449 (1979).

Vacated and remanded.

Judge WELLS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

The issue presented is whether the claimant is eligible for unemployment benefits when she quits her job because her employer reduces her work hours. The majority holds the determinative issue is simply whether the reduction of claimant's working hours was so "substantial" as to constitute good cause for quitting attributable to her employer. I disagree. Under our case law, the dispositive question is instead whether claimant's refusal of her employer's offer of work at reduced hours is a refusal of "suitable work" under N.C.G.S. Sec. 96-14(3) (1985).

Just as an unemployed claimant is disqualified for unemployment benefits if he or she "refuses" suitable work, a claimant is likewise disqualified from unemployment benefits if he or she "quits" employment when suitable work is offered. *See* Sec. 96-14(3) (unemployed claimant disqualified if he fails without good cause to accept suitable work when offered); *Bunn v. North Carolina State Univ.*, 70 N.C. App. 699, 703, 321 S.E. 2d 32, 35, *disc. rev. denied*, 313 N.C. 173, 326 S.E. 2d 31 (1985) (inconsistent to allow unemployed claimant benefits where refuses unsuitable work but deny benefits to claimant who refuses to continue unsuitable work); *see also Poteat v. Employment Sec. Comm'n*, 319 N.C. 201, 205 n. 1, 353 S.E. 2d 219, 221 n. 1 (1987) (applying *Bunn* analysis but reaching different result where suitable work was available during week claimant received discharge notice; Court noted its distinguishing *Bunn* was neither approval nor disapproval of *Bunn* "result"). Irrespective of whether the claimant is employed at the time suitable work is offered, allowing benefits to a claimant who quits his job rather than accept suitable work from the same employer contravenes the purpose of the Employment Security Act. *See In re Watson*, 273 N.C. 629, 633, 161 S.E. 2d 1, 6 (1968) (Act must be construed to provide benefits to those

who are available for work at suitable employment). Under functionally identical circumstances, our Supreme Court has specifically held that the question of "good cause" under Section 96-14(1) must be determined in light of the suitability of other work under Section 96-14(3). In *In re Troutman*, 264 N.C. 289, 141 S.E. 2d 613 (1965), claimant refused an offer of other employment by the same employer who terminated him. The Court reasoned that whether the claimant had left work voluntarily without good cause under subsection (1) turned on the question whether he had been offered other suitable work under subsection (3). *Id.* at 292, 141 S.E. 2d at 617; *see also Poteat*, 319 N.C. at 204-05, 353 S.E. 2d at 221 (determining whether claimant disqualified under subsection (1) based on availability of suitable work under subsection (3) ). The *Troutman* Court concluded that the other work offered was not suitable.

There is no dispositive distinction between the facts of this case and the facts in *Troutman, Poteat* and *Bunn* which would require our crafting a completely different rationale for this case. Rather than leave the Commission to make its determination based simply on some ill-defined concept of mere reduction of hours, Section 96-14(3) instead provides a specific array of factors to guide the Commission in determining whether there is "good cause" for quitting where arguably suitable work has been offered:

> In determining whether or not any work is suitable for an individual, the Commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

> Notwithstanding any other provisions of this Chapter, *no work shall be deemed suitable* and benefits shall not be denied under this Chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions: . . . *If the remuneration, hours, or other conditions or the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality* . . . [Emphasis added.]

As "suitable work" cannot be determined with reference to a fixed formula, it must necessarily be determined on a case-by-case basis. However, where the wages or hours of the offered employment are "substantially less favorable to the individual than those prevailing for similar work in the locality," the work is clearly not suitable under Section 96-14(3). In that case, we could not conclude that a claimant had quit employment "voluntarily without good cause attributable to the employer" under Section 96-14(1).

The average claimant cannot be expected to provide evidence regarding hours and wages prevailing for similar work in the locality. Thus, the employer is here required to prove this claimant refused "suitable work." *See Intercraft Ind. Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E. 2d 357, 360 (1982) (burden on employer to show circumstances which disqualify claimant from unemployment benefits). The record discloses no evidence whether the hours or remuneration offered by this employer were substantially less favorable to claimant than those prevailing for similar work in the locality. Once construed properly in light of subsection (3), the record thus fails to show adequate grounds for disqualifying claimant under these facts from benefits under Section 96-14(1).

Therefore, I would vacate the judgment of the Superior Court and the order of the Commission disqualifying claimant from benefits. On remand, I note the Commission would still be required to determine if claimant is otherwise eligible for unemployment benefits.