WILLIAM N. DOYLE, PETITIONER-APPELLANT v. SOUTHEASTERN GLASS LAMINATES, INC., AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, RESPONDENTS-APPELLEES

No. 9019SC1318

(Filed 5 November 1991)

1. Master and Servant § 108 (NCI3d)— unemployment compensation—rebuttable presumption

Under the Unemployment Compensation Act, a claimant is presumed to be entitled to benefits, but this presumption is rebuttable with the burden on the employer to establish circumstances disqualifying the claimant.

**Am Jur 2d, Unemployment Compensation § 52.**

DOYLE v. SOUTHEASTERN GLASS LAMINATES

[104 N.C. App. 326 (1991)]

2. **Master and Servant § 108.1 (NCI3d) — unemployment bene-fits — substantial fault — absences**

The trial court did not err in affirming the Employment Security Commission's decision to disqualify petitioner from receiving benefits where petitioner was discharged for excessive absenteeism; petitioner had numerous incidents of tardiness; although most of petitioner's day-long absences were approved by his supervisor, they were not necessarily "excused" absences as defined in the employee handbook; petitioner received three written warnings in a five month period for excessive tardiness and absenteeism; and petitioner testified that he knew after his third warning and suspension that he could be let go for more tardiness or absences. N.C.G.S. § 96-14(2A).

**Am Jur 2d, Unemployment Compensation § 58.**

**Discharge for absenteeism or tardiness as affecting right to unemployment compensation. 58 ALR3d 674.**

3. **Master and Servant § 108.1 (NCI3d) — unemployment com-pensation — excessive absenteeism — findings — supported by evidence**

There was evidence in an unemployment compensation proceeding to support the Employment Security Commission's findings concerning the posting of additional absences during a lay-off period and petitioner's knowledge that his absences were unexcused or violations of company policy.

**Am Jur 2d, Unemployment Compensation § 58.**

**Discharge for absenteeism or tardiness as affecting right to unemployment compensation. 58 ALR3d 674.**

4. **Master and Servant § 100 (NCI3d) — unemployment compen-sation — attorney fees**

The trial court did not err by failing to award attorney fees to a petitioner who was granted unemployment benefits by an appeals referee but denied benefits on appeal to the full Commission. N.C.G.S. § 96-17(b1) directly addresses the issue of attorney fees and states that "in any court proceeding under this Chapter each party shall bear its own costs and legal fees." Because neither the Commission nor the employer acted without substantial justification under N.C.G.S. § 6-19.1,

the Legislature's intent concerning which statute would control under these circumstances need not be addressed.

**Am Jur 2d, Unemployment Compensation § 10.**

Judge COZORT dissenting.

APPEAL by petitioner from judgment entered 18 September 1990 by *Judge Samuel A. Wilson* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 17 September 1991.

In December 1989, petitioner filed a claim for unemployment insurance benefits which was granted on 23 January 1990. The employer, Southeastern Glass Laminates, Inc., appealed. An Appeals Referee issued its decision in favor of petitioner on 23 February 1990. On 5 March 1990, the employer appealed this decision to respondent Employment Security Commission. On 20 April 1990, the Commission reversed the decision of the Appeals Referee and found that petitioner was disqualified from receiving benefits for nine weeks.

Petitioner appealed the Commission's administrative decision to Mecklenburg County Superior Court. On 18 September 1990, the trial court entered its judgment in respondent's favor. Petitioner appeals from this judgment.

*Legal Services of Southern Piedmont, Inc., by Kenneth L. Schorr, for petitioner-appellant.*

*Employment Security Commission, by Chief Counsel T.S. Whitaker, and Staff Attorney John B. DeLuca, for respondent-appellee.*

ORR, Judge.

Petitioner argues six errors on appeal. For the following reasons, we hold that the trial court did not err and affirm its judgment of 18 September 1990.

It is well-settled law in this state that in an appeal from a decision of the Employment Security Commission, the reviewing court must determine if there was evidence before the Commission to support its findings of fact and determine whether the facts found support the Commission's conclusions of law and resulting decision. *In re Miller v. Guilford County Schools*, 62 N.C. App. 729, 731, 303 S.E.2d 411, 412-13, *disc. review denied*, 309 N.C.

321, 307 S.E.2d 165 (1983) (citation omitted). The question presented for the reviewing court is "whether the facts found are sufficient to support the judgment, *i.e.*, whether the court correctly applied the law to the facts found." *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E.2d 357, 359 (1982) (citation omitted).

[1] Under the Unemployment Compensation Act, a claimant is presumed to be entitled to benefits. This presumption is rebuttable with the burden on the employer to establish circumstances disqualifying the claimant. *Id.* Based upon the evidence in the present case, we hold that the employer met its burden to establish those circumstances to disqualify petitioner.

In the case *sub judice*, the Commission made the following findings of fact.

1. At the time the Claims Adjudicator issued a determination in this matter, the claimant had filed continued claims for unemployment insurance benefits for the period December 31, 1989, through January 13, 1990. The claimant has registered for work with the Commission, has continued to report to an employment office of the Commission and has made a claim for benefits in accordance with N.C. Gen. Stat. § 96-15(a).

2. The claimant last worked for Southeastern Glass Laminates, Inc., on December 19, 1989. The claimant was employed as a quality control inspector.

3. The claimant was discharged from this job because of what the employer considered excessive absenteeism after prior warnings. The employer's policy is to issue written warnings. Three written warnings within a six (6) month period leads to suspension, and any violations after suspension lead to discharge. The management of the company reserves the right, however, to discharge for "excessive absenteeism."

4. The claimant had received warnings concerning either lateness or absences on July 15, 1989 (for absenteeism), December 2, 1989 (excessive tardiness), and December 9, 1989 (excessive absenteeism). He was suspended effective December 20, 21, and 22, 1989. The claimant had also received warnings earlier in 1989.

5. The company was on a lay-off from December 19, 1989, through January 2, 1990. Between the claimant's last day of work and the time he returned after lay-off, the personnel department posted further infractions to his record for absences. The claimant was discharged for excessive absenteeism upon review of his overall attendance record.

6. The employer's policy provides that any unexcused absence will be considered excessive. The employer grants leave for military duty, injuries and personal leave.

7. The claimant understood that any infraction following a suspension would lead to discharge as he received a company handbook of rules in 1986.

8. On each of the claimant's absences, he either had a medical reason with documentation for being out or had requested and received permission from his supervisor to be out.

Based upon the above findings, the Commission concluded that under N.C. Gen. Stat. § 96-14(2A), "the claimant was discharged for substantial fault connected with the work."

[2] Petitioner first argues that the trial court erred in affirming the Commission's findings and conclusions because as a matter of law, petitioner cannot be at "substantial fault" under the above statute for missing work, so long as his absences were approved by his supervisor. We disagree.

Under § 96-14(2A):

For a period of not less than four nor more than 13 weeks beginning with the first day of the first week during which or after the disqualifying act occurs with respect to which week an individual files a claim for benefits if it is determined by the Commission that such individual is, at the time the claim is filed, unemployed because he was discharged for substantial fault on his part connected with his work not rising to the level of misconduct. Substantial fault is defined to include those acts or omissions of employees over which they exercised reasonable control and which violated reasonable requirements of the job but shall not include (1) minor infractions of rules unless such infractions are repeated after a warning was received by the employee, (2) inadvertent mistakes made by the employee,

nor (3) failures to perform work because of insufficient skill, ability, or equipment.

N.C. Gen. Stat. § 96-14(2A) (1990).

In *Lindsey v. Qualex, Inc.*, 103 N.C. App. 585, 591, 406 S.E.2d 609, 612 (1991), this Court held that a claimant's consistent unexcused absences and tardiness may rise to the level of substantial fault under § 96-14(2A). The case at bar is similar. Petitioner had numerous incidents of tardiness documented in the record. Although most of petitioner's day-long absences were approved by his supervisor, they were not necessarily "excused" absences as defined in the employee handbook.

Moreover, under the statute, the Commission may find substantial fault for "minor infractions" if the employee has repeated infractions and the employee receives a warning. Here, petitioner received three written warnings in a five month period for excessive tardiness and absenteeism. Petitioner testified that after his third warning and suspension in December that he knew that he could be "let go" for more tardiness or absences. We find that this is enough to meet the statutory requirements under N.C. Gen. Stat. § 96-14(2A).

We, therefore, hold that the trial court did not err in affirming the Commission's decision to disqualify petitioner from receiving unemployment benefits for nine weeks.

[3] Petitioner next argues that the evidence of record does not support findings of fact 5, 6, and 7. We have reviewed the evidence and find that it supports these findings. There is substantial evidence in the record to support finding number 5. There is no dispute that the company was on a lay-off from 19 December 1989 through 2 January 1990. Petitioner testified that he was either absent or tardy on the additional posted dates for December 1989. Ms. Terry Hannon, Personnel Assistant, testified from written records that additional unexcused absences or tardiness had been posted to petitioner's employment record in December 1989 and that he was discharged after reviewing his overall attendance record.

Petitioner challenges findings 6 and 7 to the extent that they state that he knew that his absences were unexcused or violations of company policy. Petitioner testified that he believed that his absences were excused if approved by his supervisor. He further

testified that he was told they were unexcused when he was terminated.

However, petitioner acknowledged that he received an employee handbook and was aware that further infractions of work rules, including his tardiness and absences, could lead to his discharge. Further, petitioner knew, through his written warnings, that he was close to being terminated for excessive absences or tardiness and testified to this. Therefore, we hold that the evidence supports findings of fact 6 and 7.

[4] The remaining issue we must address is whether the trial court erred in failing to award attorneys' fees to petitioner. We hold that the trial court did not err.

Petitioner argues that N.C. Gen. Stat. § 6-19.1 permits recovery of attorneys' fees in this action because "the agency acted without substantial justification in pressing its claim against the party; and . . . there are no special circumstances that would make the award of attorney's fees unjust." N.C. Gen. Stat. § 6-19.1 (1986). We disagree with this contention.

First, we find no evidence in the record before us that "the agency acted without substantial justification in pressing its claim against [petitioner]." The employer had every right to appeal the appeals referee's decision to the Full Commission and the Commission acted on that appeal. Petitioner alleged several procedural violations during this appeal. We have reviewed the record and find that these violations, if any, do not rise to the level of acting "without substantial justification" required by the statute.

Second, N.C. Gen. Stat. § 96-17(b1) directly addresses the issue of attorneys' fees and states that "in any court proceeding under this Chapter each party shall bear its own costs and legal fees." This statute is specific to actions under Chapter 96 and therefore controls the issue in the present case. It is well-settled law that when one statute speaks directly to a particular situation, that statute will control other general statutes regarding that particular situation, absent clear legislative intent to the contrary. *Whittington v. N.C. Department of Human Resources*, 100 N.C. App. 603, 606, 398 S.E.2d 40, 42 (1990), *citing, Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 151 S.E.2d 582 (1966). Because we find that neither the Commission nor the employer acted "without substantial justification" under § 6-19.1, we need not address the Legislature's

DOYLE v. SOUTHEASTERN GLASS LAMINATES

[104 N.C. App. 326 (1991)]

intent concerning which of the statutes would control under those circumstances. Therefore, we hold that § 96-17(b1) is specific to the case before us, and petitioner is responsible for his own legal fees and costs.

We have considered petitioner's remaining assignments of error concerning notice of appeal, new evidence allegedly considered by the Commission and additional affidavits and find them without merit.

For the above reasons, we affirm the trial court's judgment.

Affirmed.

Judge LEWIS concurs.

Judge COZORT dissents.

Judge COZORT dissenting.

I disagree with the conclusion that petitioner was discharged for substantial fault and was thus subject to disqualification of benefits for nine weeks. I base my opinion on a review of the record below which shows, without dispute, that petitioner committed no attendance infractions after his suspension, and he could not have been properly discharged for absenteeism.

The record does not contain a complete copy of the employment handbook, making effective appellate review difficult. We must rely on the Commission's findings as to the employer's policy. The Commission found, without exception from any party, that the employer's policy provides for written warnings, suspension, and "any violations *after* suspension lead to discharge." (Emphasis added.) This three-step process apparently did not apply to certain egregious infractions, known as "group one work rules," which could result in immediate discharge. Excessive absenteeism, the reason given for petitioner's discharge, is not listed in the "group one work rules." Excessive absenteeism is listed in the "group two work rules," which appear, from my reading of the woefully inadequate record, to be the less serious violations subject to the three-step disciplinary process: written warning, suspension, and discharge for violations occurring after suspension.

IN THE COURT OF APPEALS

As the record plainly shows, petitioner received warnings prior to 19 December 1989. He was suspended on 19 December 1989. The company was on lay-off, through no fault of the petitioner, from 20 December 1989 through 2 January 1990. On 2 January 1990 the employer discharged petitioner, apparently for absences which occurred before 19 December 1989, but which the employer allegedly failed to "post" until some point during the lay-off. That purported discharge did not comply with the employer's own policy which provides that discharge must be for infractions which occur *after* suspension. Such would, of course, be impossible here because the company was on lay-off while petitioner was suspended.

There is no doubt that petitioner had numerous absences and that they may have been sufficient to justify discharge. But the employer must follow its own rules in making that determination, and discharge in violation of its own rules should not be the basis of disqualifying petitioner from benefits.

I vote to reverse the lower court's judgment affirming the Commission, and I respectfully dissent.