TEMONIA D. DAVIS, Petitioner v. BRITAX CHILD SAFETY, INCORPORATED, AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, Respondents

No. COA03-624

(Filed 16 March 2004)

**Unemployment Compensation— discharge based on substantial fault—attendance policy**

The trial court erred by affirming the North Carolina Employment Security Commission's determination that petitioner employee is partially disqualified from receiving unemployment insurance benefits based on her being discharged due to substantial fault on her part for abusing defendant company's points-based attendance policy, because the company's general points-based policy may not form the basis of a finding of fault where petitioner never accumulated the twenty-four points necessary to warrant discharge under the policy, and the company did not follow this policy when it fired petitioner for absenteeism.

Appeal by petitioner from judgment entered 3 March 2003 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 February 2004.

*Legal Aid of North Carolina, Inc., by Linda S. Johnson, Maureen C. Atta, and Kenneth L. Schorr, for petitioner-appellant.*

*Chief Counsel C. Coleman Billingsley, Jr., by Camilla F. McClain, for respondent-appellee Employment Security Commission of North Carolina.*

LEVINSON, Judge.

The present appeal arises from a dispute over whether petitioner-appellant Temonia D. Davis is entitled to unemployment compensation benefits after being discharged by Britax Child Safety, Inc., for

alleged abuse of the company's attendance policy. Davis appeals from a superior court order affirming the North Carolina Employment Security Commission's determination that Davis is partially disqualified from receiving unemployment insurance benefits because she was discharged due to substantial fault on her part. We reverse and remand.

Temonia Davis began working with Britax Child Safety, Inc. on 7 September 1999 as an assembler. Britax made Davis aware of its points-based, "no-fault" attendance policy on 1 February 2000. The policy states that "[e]xcessive absenteeism or tardiness will not be tolerated and may be cause for disciplinary action up to and including discharge." Under Britax's policy, an employee accumulates points for being absent and tardy.

The nature of an absence or tardiness determines the number of points an employee receives. An employee does not accumulate any points for, *inter alia*, taking an earned sick day, medical or family leave, missing work due to a traffic accident in which the employee was involved while coming to work, or taking earned vacation time after giving one week prior notice. An employee receives one point for an absence where the employee has properly "called-in" and presents a signed doctor's slip, one point for taking an earned vacation day without giving one week prior notice, and one point for being less than ten minutes tardy or leaving with less than ten minutes left before the end of the employee's shift. Employees who are late to work by more than ten minutes or who leave work with more than ten minutes of their shift remaining receive two points. An employee receives three points for an absence without a proper "call-in" for which no doctor's slip is presented.

Disciplinary action coincides with accumulation of points by an employee in a twelve month period. Upon receiving twelve points, an employee will receive a written notice of her point total. After accumulating sixteen points, the employee is given a written warning. At twenty points, the employee receives a "final" written warning. Upon receiving twenty-four points, an employee will be discharged. On the first day of each calendar month, Britax removes points accumulated by an employee during that same month of the previous year.

During the course of her employment, Davis was either absent or tardy on numerous occasions. Davis told her employer that many of her absences were attributable to high blood pressure, which made

her dizzy and sick. She also suffered from repeated sinus infections. For most of her absences, Davis submitted a doctor's note.

Davis received written warnings on 18 February and 8 May 2000 for having sixteen and nineteen attendance points, respectively, and a "final written warning" on 8 June 2000 for having twenty-two attendance points. After being tardy without properly clocking-in for work, Davis received one additional point on 16 August 2000, at which time Britax issued another "final written warning" to her for having twenty-three attendance points. On 9 August 2001, Britax again issued a "final written warning" to Davis for having twenty attendance points; the warning contained the following handwritten admonition: "[p]olicy states an employee will be discharged when they [sic] reach 24 points[.]" On 29 October 2001, upon accumulating twenty-one attendance points, Davis received yet another "final written warning" which contained the following handwritten comment: "the no fault attendance policy states that any employee who accumulates 24 or more points in a 12-calendar-month period under this system will be discharged."

On 14 March 2002, Davis received one point for taking an earned vacation day without giving one week prior notice. At this time, she received a written warning "in accordance with the No Fault Attendance Policy" for having sixteen points. Between 19 March and 28 March, Davis received two points for being more than ten minutes late for work, three points for an unexcused absence, and one point for a three-day absence for which a doctor's slip was submitted. Britax issued a "final written warning" to Davis on 1 April 2002 for having accumulated twenty-two points; the warning stated that "[e]xcessive absenteeism or tardiness will not be tolerated and may be cause for disciplinary action up to and including termination."

Moreover, Britax representatives concluded that Davis had abused the point system by missing work until she accumulated twenty or more points and then reporting to work until her point total fell below twenty, at which time she would begin to miss again. Therefore, on 1 April 2002, the company also placed Davis on "disciplinary probation" with the following written terms:

Because of excessive abuse of the point system [Davis] is being placed on disciplinary probation until June 1, 2002. During this time [Davis] is expected to be [at] work on time and to be out only with pre-approved authorization. Any absence longer than

3 days will require a leave of absence. A dramatic improvement needs to be seen in [Davis'] attendance. If abuse continues it will be subject to further disciplinary action up to and including termination.

Davis was neither absent nor tardy while on probation.

Following the probation, Davis called in sick on 4 June and again on 6 June 2002. Although she did not have enough remaining sick leave to cover the 6 June absence, Davis was issued only one point because she submitted a doctor's note. In addition, on 5 June 2002, Davis was issued one point for leaving work and then returning. A sinus infection caused these absences. On 7 June 2002, Britax issued a final written warning to Davis for having twenty-one points and terminated her employment for "excessive absenteeism and abuse of the attendance point system."

Following her discharge, Davis filed a claim for unemployment insurance benefits with the North Carolina Employment Security Commission. An adjudicator, and subsequently a hearing officer, determined that Davis was not discharged due to substantial fault on her part and should not be partially disqualified from receiving benefits. On Britax's appeal, the Employment Security Commission reversed. The Commission made the following pertinent findings of fact:

3. The claimant [Davis] was discharged for abuse of the employer's attendance policy due to excessive absenteeism despite prior disciplinary actions.

. . . .

7. . . . The employer concluded that the claimant abused the attendance policy because the claimant would miss work until she had accumulated twenty or more points and then the claimant would report to work until she was back down to under twenty points. This was accomplished due to the employer's policy of removing points after one year.

8. During her probationary period, the claimant reported to work although she was sick. The claimant was aware that her job was in jeopardy if she was absent from work during her probationary period. Pursuant to the employer's attendance policy, two attendance points were removed during the probationary period which left the claimant with 20 attendance points.

DAVIS v. BRITAX CHILD SAFETY, INC.

[163 N.C. App. 277 (2004)]

9. After the 60 day period had elapsed, the claimant was absent on June 4 and 6, 2002, and left work early on June 5, 2002. The claimant received 1 attendance point on June 5 and 6, 2002. The claimant was absent due to a sinus infection. The claimant provided the employer with a doctor's note regarding her absence.

The Commission made the following conclusions of law:

The Commission . . . concludes that the claimant was discharged for substantial fault connected with the work. . . . Further, the claimant must be held disqualified from receiving unemployment insurance benefits for a period of nine (9) weeks.

Davis appealed to the Mecklenburg County Superior Court, which affirmed the decision of the Commission.

Davis appeals to this Court, contending (1) the Superior Court and the Commission erroneously interpreted N.C.G.S. § 96-14(2a) in concluding that Davis was discharged due to substantial fault on her part for abusing her employer's points-based policy, and (2) there is no competent record evidence to support the Commission's findings of fact which indicate that Davis abused Britax's attendance policy. Because we conclude that Davis' first argument has merit, we need not address the second.

---

A party claiming to be aggrieved by a decision of the Employment Security Commission may "file[] a petition for review in the superior court of the county in which he resides or has his principal place of business." N.C.G.S. § 96-15(h) (2003). "The legislature, in granting this jurisdiction to the superior court, intended for the superior court to function as an appellate court." *In re Enoch*, 36 N.C. App. 255, 256, 243 S.E.2d 388, 389 (1978). "An appeal may be taken from the judgment of the superior court, as provided in civil cases." N.C.G.S. § 96-15(i) (2003). The same standard of review applies in the superior court and in the appellate division: "the findings of fact by the Commission, if there is any competent evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." *Id.* Accordingly, this Court, like the superior court, will only review a decision by the Employment Security Commission to determine "whether the facts found by the Commission are supported by competent evidence and, if so, whether the findings support the conclusions of law." *RECO Transp., Inc. v. Employment Sec. Comm'n*, 81 N.C. App. 415, 418, 344 S.E.2d 294, 296 (1986).

DAVIS v. BRITAX CHILD SAFETY, INC.

[163 N.C. App. 277 (2004)]

"Ordinarily a claimant is presumed to be entitled to benefits under the Unemployment Compensation Act, but this is a rebuttable presumption with the burden on the employer to show circumstances which disqualify the claimant." *Intercraft Indus. Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E.2d 357, 359 (1982). An employee is partially disqualified from receiving unemployment compensation benefits "if it is determined by the Commission that such individual is, at the time the claim is filed, unemployed because he was discharged for substantial·fault on his part connected with his work not rising to the level of misconduct." N.C.G.S. § 96-14(2a) (2003).

> Substantial fault is defined to include those acts or omissions of employees over which they exercised reasonable control and which violate reasonable requirements of the job but shall not include (1) minor infractions of rules unless such infractions are repeated after a warning was received by the employee, (2) inadvertent mistakes made by the employee, nor (3) failures to perform work because of insufficient skill, ability, or equipment.

*Id.* Thus, "[r]easonable control coupled with failure to live up to a reasonable employment policy equals substantial fault." *Lindsey v. Qualex, Inc.*, 103 N.C. App. 585, 590, 406 S.E.2d 609, 612 (1991).

"An employee has 'reasonable control' when she has the physical and mental ability to conform her conduct to her employer's job requirements." *Id.* This Court has supplied the following examples of "reasonable control":

> [A]n employee does not have reasonable control over failing to attend work because of serious physical or mental illness. An employee does have reasonable control over failing to give her employer notice of such absences. Also, an employee does not have reasonable control over tardiness caused by an unexpected traffic accident. An employee does have reasonable control over tardiness caused by her failure to maintain her own vehicle. An employee also has reasonable control over her ability to comply with job rules when the employer's policy gives her the opportunity to make up for demerits resulting from circumstances in which she had marginal or little control.

*Id.*

"What constitutes 'reasonable requirements of the job' will vary depending on the nature of the employer's business and the employee's function within that business." *Id.* This Court has set forth

six non-exclusive factors which may be used to assess the reason-ableness of an employer's policy:

> (1) how early in the employee's tenure she receives notice of the policy; (2) the degree of departure from expected conduct which warrants either a demerit or other disciplinary action under the policy; (3) the degree to which the policy accommo-dates an employee's need to deal with the exigencies of everyday life; (4) the employee's ability to redeem herself or make amends for rule violations; (5) the amount of counseling the employer affords the employee concerning rule violations; and (6) the degree of notice or warning an employee has that rule violations may result in her discharge.

*Id.* "The reasonableness of the employer's job requirements should be analyzed on a case-by-case basis in light of the totality of the cir-cumstances surrounding the employee's function within the employer's business." *Id.*

Non-compliance with an employer's attendance policy may form the basis of a finding of substantial fault on an employee's part. *See id.* at 591, 406 S.E.2d at 612-13. Neither the General Statutes nor any decision from our appellate courts require that an employer's policy be a general policy that is applicable to all employees. *See,* *e.g.,* G.S. § 96-14(2a) (using the phrase "reasonable requirements of the job" rather than "employer policies"); *Lindsey,* 103 N.C. App. at 590-91, 406 S.E.2d at 612-13 (applying the concept of "reasonable requirements of the job" to an employer's generally applicable pol-icy). Thus, an employer may impose upon an employee reasonable requirements, notwithstanding the fact that such special require-ments may deviate from—or be in addition to—the employer's gener-ally applicable policy. However, "discharge in violation of [an employer's] own rules should not be the basis of disqualifying [a claimant] from benefits." *Doyle v. Southeastern Glass Laminates, Inc.,* 104 N.C. App. 326, 334, 409 S.E.2d 732, 736 (1991) (Cozort, J., dis-senting), *rev'd for reasons stated in the dissent,* 331 N.C. 748; 417 S.E.2d 236-37 (1992) (*per curiam*).

In *Doyle,* an employee was discharged for excessive absenteeism. The employer's policy made excessive absenteeism subject to a three step disciplinary process: written warning, suspension, and discharge for violations occurring after suspension. The employee received numerous warnings and was ultimately suspended. When the employee returned from suspension, he was discharged for atten-

dance violations which had occurred prior to the date of his suspension. A majority of this Court affirmed a denial of benefits to the employee on the grounds that he had been discharged due to substantial fault on his part. Judge Cozort dissented, stating that because the employee had not actually violated his employer's attendance policy by committing attendance infractions after his suspension, the employee could not have been discharged due to substantial fault on his part. Our Supreme Court reversed the majority for the reasons stated in Judge Cozort's dissent. *Id.* at 333-34 409 S.E.2d at 735-36 (Cozort, J. dissenting), *rev'd for reasons stated in the dissent,* 331 N.C. 748; 417 S.E.2d 236-37 (1992) (*per curiam*).

In the present case, it is possible that Britax imposed requirements upon Davis that were not generally applicable to other employees. It is likewise possible that Davis violated these requirements. These matters present questions of fact, which the Commission should resolve on remand. In the decision currently under review, however, it does not appear the Commission considered whether Britax imposed any additional requirements on Davis beyond the general attendance policy. Rather, the Commission's decision that Davis was at substantial fault in her discharge relied on Britax's general attendance policy. In so doing, the Commission misapplied applicable law.

Pursuant to the decision in *Doyle,* Britax's general, points-based policy may not form the basis of a finding of substantial fault where Davis never accumulated the twenty-four points necessary to warrant discharge under the policy and Britax did not follow this policy when it fired Davis for absenteeism. The Commission erred in ruling to the contrary, and the superior court erred in affirming the Commission. The superior court's order is reversed, and this case is remanded with instructions to reverse the Commission's decision and remand the matter to the Commission for further proceedings and entry of a decision consistent with this opinion. On remand from the superior court, the Commission should determine (1) whether Britax imposed reasonable employee-specific requirements upon Davis to which she had the ability to conform, and (2) whether Davis violated such requirements.

Reversed and remanded.

Judges HUNTER and McCULLOUGH concur.