BRAD BOYLAND, PETITIONER v. SOUTHERN STRUCTURES, INC. AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, RESPONDENTS

No. COA04-1235

(Filed 2 August 2005)

**1. Unemployment Compensation— findings of fact—employee discharged for substantial fault**

The trial court did not err by concluding that the Employment Security Commission's (ESC) findings of fact did not support the conclusion that petitioner employee was discharged for substantial fault under N.C.G.S. § 96-14(2a), because: (1) the employer did not have an employee handbook nor did it have a list of company rules and regulations, which means the Court must rely on the Commission's findings as to the employer's policy and the statute is construed strictly in petitioner's favor; (2) the Commission's findings of fact do not indicate that the employer used a formal point system or written warning system to repri-

**BOYLAND v. SOUTHERN STRUCTURES, INC.**

[172 N.C. App. 108 (2005)]

mand its employees; (3) ESC failed to enter specific findings of fact that the employer expressly warned petitioner that failure to submit log notes was a violation of employer's rules and that petitioner continued to violate this requirement after being warned; (4) ESC failed to enter specific findings of fact that the employer expressly warned petitioner that failure to call in was a violation of employer's rules and that continued violation of the rule would result in discharge; (5) the act of advising an employee about the employer's absence policy does not necessarily constitute a warning; and (6) ESC failed to make specific findings that employer warned petitioner that his behavior including failure to follow up on his duties, failure to follow directions, and his poor attitude, was in violation of certain rules and that petitioner continued the behavior after being warned that such behavior could lead to discharge.

**2. Unemployment Compensation— qualification for unemployment benefits**

The trial court did not err by concluding that petitioner employee was not disqualified from unemployment benefits, because: (1) the Employment Security Commission (ESC) did not properly reach its conclusion of substantial fault under N.C.G.S. § 96-14; and (2) there is no remaining basis for disqualifying petitioner from receiving unemployment benefits once it was determined that ESC's findings did not support its conclusion that petitioner was substantially at fault.

Judge STEELMAN dissenting.

Appeal by respondent Employment Security Commission of North Carolina from judgment entered 23 April 2004 by Judge Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 22 April 2005.

*Legal Aid of North Carolina, Inc., by Janet McAuley Blue, for petitioner-appellee.*

*Employment Security Commission of North Carolina, by Regina S. Adams, for respondent-appellant.*

TIMMONS-GOODSON, Judge.

Employment Security Commission of North Carolina ("ESC" or "the Commission") appeals an order of the trial court wherein the trial court held that Brad Boyland ("petitioner") was qualified to

receive unemployment benefits. For the reasons stated herein, we affirm the order of the trial court.

The factual and procedural history of this case is as follows: Petitioner was employed by Southern Structures, Inc. ("employer") as a construction job superintendent from February 2000 until he was discharged in May 2002. On 16 June 2002, petitioner filed a claim with ESC for unemployment insurance benefits. Upon review of the claim, the ESC adjudicator concluded that petitioner was qualified for benefits.

Employer appealed the ruling to an ESC appeals referee. The referee conducted an evidentiary hearing, made findings of fact and entered the following conclusion of law: "It is concluded from the competent evidence in the record that the claimant's job performance did not meet the reasonable expectations of the employer. As such, the claimant was discharged for substantial fault on his part connected with the work." The referee held that "[c]laimant is disqualified for unemployment benefits for a period of nine weeks beginning June 16, 2002 and ending August 17, 2002."

Petitioner appealed the referee's decision to the Commission. Upon review of the case, the Commission concluded "that the facts found by the Appeals Referee are supported by competent and credible evidence contained in the record." The Commission further concluded that "the Appeals Referee properly and correctly applied the Employment Security Law (G.S. §96-1 et seq.) to the facts as found, and the resultant decision was in accordance with law and fact." The Commission affirmed the referee's decision.

Petitioner then filed a petition for judicial review with the superior court, arguing that the evidence did not support the findings of fact, and the findings did not support the conclusion of law that petitioner was discharged for substantial fault. Upon review of the matter, the superior court found as a fact that the Commission failed to find whether petitioner violated an explicit policy and whether petitioner was warned regarding his conduct. The superior court concluded the findings of the Commission were not sufficient to support its conclusions of law that petitioner was discharged for substantial fault. The superior court remanded the matter to ESC for "another evidentiary hearing and the issuance of a new decision."

A second evidentiary hearing was conducted by the appeals referee and additional testimony was admitted into evidence. Upon con-

sideration of this new evidence, the referee made the following pertinent findings of fact:

4. The claimant was discharged from this job for poor job performance.

5. The claimant was hired to train as a construction job superintendent under Ms. Faw and the then superintendent. When the superintendent left in April or May 2001, Ms. Faw left the claimant as the superintendent and continued the training.

6. The employer does not have an employee handbook nor does she have a list of company rules and regulations.

7. On or about October 30, 2001, Ms. Faw gave the claimant his evaluation. Some of the problems with his performance were his attitude towards some of the employees especially when it came to clean up that the claimant did not think was part of his job although everyone was responsible for handling it. She counseled him that he needed to be more observant and organized on the job site. He was to oversee the subcontractors and make sure deliveries were correct. She advised him that taking notes, or better notes, during meetings would help him in his observations and organization and would be something he could refer back to as the project progressed to make sure the work as being properly performed. It was also discussed that punch list items needed to be taken care of sooner, that the credit card was to only be used for business purposes, and that paperwork of what he did each day needed to be kept and turned in on a weekly basis to track what he had done each day.

8. In December 2001, Ms. Faw hired Mr. Rhoades as the project manager because she had not seen an improvement in the claimant's job performance. Ms. Faw told the claimant that he would be working under not only her supervision but also that of Mr. Rhoades.

9. The claimant did not timely follow instructions of Mr. Rhoades. One specific instance related to covering a floor. Ms. Faw had told the claimant in the past that she liked the work he did in covering the floors and that she preferred that he did it rather than another employee. Mr. Rhoades gave the claimant instructions to cover a certain floor at least twice but it was not until Ms. Faw instructed him to do it that he did it.

10. The claimant was sent to a trade show in Atlanta. He was instructed to get information on how to create a daily log of work performed by a superintendent. The claimant got information and beginning February 2001, claimant was instructed to keep a daily log of the work he performed, the amount of time spent, and what was being done at each job site. The claimant was instructed to turn the daily logs in every two weeks with his time sheet. He was given a palm pilot to keep his notes along with a keyboard.

11. Claimant was able to keep detailed daily log notes and was able to turn them in every two weeks for the period of February 2, 2001 through March 14, 2001. Ms. Faw was pleased with the notes.

12. Claimant stopped keeping notes for the period of March 15, 2001 through August 5, 2001.

13. Claimant started to keep notes again beginning August 6, 2001 but failed to turn them in every two weeks as required. Ms. Faw asked him several time[s] to turn them in and even suggested that claimant give Ms. Summey his palm pilot and she would print the notes out. Claimant did not do this. Even Ms. Summey asked claimant for his daily logs but he failed to turn them in when requested. Claimaint[] failed to follow the employer's directive because he unreasonably thought that Ms. Faw and Ms. Summey were joking about the need for him to turn them in.

14. The claimant was out sick one time and did not notify Ms. Faw or Ms. Summey that he was going home sick. He was told in the future that he needed to call if he was going to be absent. Claimant was out again due to the flu and failed to call despite having been warned.

The referee made the following conclusion: "It is concluded from the competent evidence in the record that the claimant's job performance did not meet the reasonable expectations of the employer. As such, the claimant was discharged for substantial fault on his part connected with the work." The referee's decision disqualified petitioner for unemployment benefits for nine weeks.

Once again, petitioner appealed the referee's decision to the Commission. Upon review of the case, the Commission ruled in pertinent part as follows:

**BOYLAND v. SOUTHERN STRUCTURES, INC.**

[172 N.C. App. 108 (2005)]

the Commission concludes that the facts found by the Appeals Referee are supported by competent and credible evidence contained in the record, and adopts them as its own with the following modifications: . . . in FINDING OF FACT 12—Add the following as concluding sentences—

> Claimant was constantly reminded to keep the daily log notes and turn them in with his time sheets. The log notes for September 21, 2001 though December 12, 2001 were submitted on February 27, 2002. The log notes for February 21, 2002 through May 7, 2002 were not submitted until May 9, 2002, after he was terminated.

Add a new FINDING OF FACT to read—

> 15. In the spring of 2002, Ms. Faw decided to discharge the claimant because of his problems with the timely submission of the log notes, failure to call in when sick, failure to follow up on his duties, failure to follow directions, and for having a poor attitude since [a new superintendent] had been hired.

Furthermore, the Commission concludes that the Appeals Referee properly and correctly applied the Employment Security Law (G.S. §96-1 et seq.) to the facts as found and modified, and the resultant decision was in accordance with law and fact.

The decision of the Appeals Referee is AFFIRMED.

The claimant is DISQUALIFIED for unemployment benefits for a period of nine (9) weeks beginning June 16, 2002, and ending August 17, 2002.

Again, petitioner petitioned the superior court for judicial review of the Commission's ruling. Petitioner argued in pertinent part that "[t]he Commission failed to make findings regarding whether Mr. Boyland violated an explicit policy or was warned regarding his conduct. The Commission was required to make such a finding pursuant to the [superior court's order]." Upon review of the second Commission ruling, the superior court issued an order containing the following:

> [T]he Court finds that the Commission's findings of fact do not support the conclusion that the Petitioner was discharged for misconduct or substantial fault, and further that the record evi-

dence does not support a finding that the Petitioner should be disqualified due to misconduct or substantial fault.

Based on this finding, the trial court ordered "that the decision of the Employment Security Commission finding the Petitioner disqualified for a period of nine weeks due to substantial fault is reversed and the Petitioner is not disqualified from receiving unemployment insurance benefits." It is from this order that ESC appeals.

The issues presented on appeal are whether the trial court erred by concluding that (1) ESC's findings of fact do not support the conclusion that petitioner was discharged for substantial fault;[1] and (2) petitioner was not disqualified for unemployment insurance benefits.

[1] ESC first argues that the trial court erred by concluding that ESC's findings of fact do not support the conclusion that petitioner was discharged for substantial fault. We disagree.

The standard of review for this Court in reviewing the action of ESC is governed by N.C. Gen. Stat. § 96-15(i) which provides as follows: "In any judicial proceeding under [the unemployment insurance statutes], the findings of fact by the Commission, if there is any competent evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." N.C. Gen. Stat. § 96-15(i) (2003). "Accordingly, this Court, like the superior court, will only review a decision by the Employment Security Commission to determine 'whether the facts found by the Commission are supported by competent evidence and, if so, whether the findings support the conclusions of law.' " *Davis v. Britax Child Safety, Inc.*, 163 N.C. App. 277, 281, 593 S.E.2d 97, 101 (2004) (quoting *RECO Transp., Inc. v. Employment Sec. Comm'n*, 81 N.C. App. 415, 418, 344 S.E.2d 294, 296 (1986)).

In the instant case, ESC specifically argues that the findings of fact are sufficient to support the conclusions of law. ESC does not challenge the competency of the evidence, therefore, the findings of fact are "presumed supported and are binding on appeal." *In Re Dept. of Crime Control and Public Safety v. Featherston*, 96 N.C. App. 102, 104, 384 S.E.2d 306, 307 (1989). Therefore, we limit our review to

---

1. We note that the superior court's order addresses petitioner's qualifications for unemployment benefits in terms of "substantial fault" and "misconduct". However, ESC concluded that petitioner was disqualified only on grounds of substantial fault and does not include misconduct as a basis for its ruling. Therefore, on appeal we limit the scope of our analysis to substantial fault as grounds for disqualification.

whether the Commission's findings of fact support its conclusion of law that petitioner was discharged for substantial fault connected with the employment and is disqualified from receiving unemployment benefits.

An employee may be disqualified from receiving unemployment benefits if there is substantial fault connected with the employee's work. N.C. Gen. Stat. § 96-14(2a) (2003).

Substantial fault is defined to include those acts or omissions of employees over which they exercised reasonable control and which violate reasonable requirements of the job but shall not include (1) minor infractions of rules unless such infractions are repeated after a warning was received by the employee, (2) inadvertent mistakes made by the employee, nor (3) failures to perform work because of insufficient skill, ability, or equipment.

*Id.* Section 96-14(2a) is "to be strictly construed in favor of the claimant, and the employer has the burden of proving that the claimant is disqualified." *Featherston,* 96 N.C. App. at 104, 384 S.E.2d at 308 (citing *Barnes v. The Singer Co.,* 324 N.C. 213, 376 S.E.2d 756 (1989)). The essence of the statute is that if an employer establishes a reasonable job policy to which an employee can conform, failure to conform constitutes substantial fault. *Lindsey v. Qualex, Inc.,* 103 N.C. App. 585, 406 S.E.2d 609 (1991). In the present case, the referee found that "[t]he employer does not have an employee handbook nor does she have a list of company rules and regulations." Where there is no formal set of rules to use as a reference, we rely on the Commission's findings as to the employer's policy. *See Doyle v. Southeastern Glass Laminates,* 104 N.C. App. 326, 333, 409 S.E.2d 732, 735-36 (1991) (Cozort, J., dissenting), *rev'd per curiam,* 331 N.C. 748, 417 S.E.2d 236 (1992).

To establish that an employee is substantially at fault for minor infractions, the employer must demonstrate that the employee violated a rule after having been warned by the employer. *Featherston,* 96 N.C. App. at 104, 384 S.E.2d at 308. Therefore, to support a conclusion of law that an employee is substantially at fault for minor rule infractions, ESC must enter specific findings of fact that (1) the employer warned the employee that his actions were in violation of the rules, and (2) the employee violated the rules again after having been warned.

Typically, in substantial fault cases there is a point system for rule violations, *see Lindsey,* or a system of written warnings for rule

BOYLAND v. SOUTHERN STRUCTURES, INC.

[172 N.C. App. 108 (2005)]

violations, *see Davis and Doyle*. The employee is usually notified that he will be discharged upon losing all of his points, or once he has accumulated a certain number of written warnings. However, in the present case, the Commission's findings of fact do not indicate that the employer used a formal point system or written warning system to reprimand its employees. We focus our review on the rules that the Commission notes in finding of fact 15 as giving rise to petitioner's discharge: (1) petitioner was required to timely submit log notes; (2) petitioner was required to call in when sick; (3) petitioner was required to follow up on his duties; (4) petitioner was required to follow directions; and (5) petitioner was required to have a more positive attitude. We review ESC's findings of fact for an indication that employer warned petitioner that he was in violation of each of these rules.

Employer's directive that petitioner keep a daily log was a reasonable requirement of the job, and we recognize that petitioner's failure to timely submit log notes constitutes a violation of this requirement. However, the Commission failed to enter specific findings of fact that (1) employer expressly warned petitioner that failure to submit log notes was a violation of employer's rules, and (2) petitioner continued to violate this requirement after being warned. Finding of fact 13 indicates that employer asked petitioner several times to submit log notes after petitioner failed to do so. However, it is not clear that those requests constituted a warning. As noted *supra*, the substantial fault statute is to be strictly construed in the employee's favor. In cases such as this, where the employer does not have an employee handbook, a list of rules and regulations, or a formal system of reprimand, it is especially important to construe the statute in the employee's favor because the rules and method of reprimand are at the complete discretion of the employee's supervisor. Thus, construing the statute strictly in petitioner's favor, we hold that the findings of fact do not support the conclusion that petitioner was substantially at fault under § 96-14(2a) for failing to timely submit log notes.

Next, we turn to the issue of petitioner's failure to call in when sick. In *Lindsey*, the evidence tended to show that on several occasions when the petitioner had an unreasonable number of absences, the employer warned the petitioner that if the absences continued she would be discharged. 103 N.C. App. at 589, 406 S.E.2d at 611. When the petitioner continued to have absences after the warnings, she was discharged from her position. *Id.*

**BOYLAND v. SOUTHERN STRUCTURES, INC.**

[172 N.C. App. 108 (2005)]

In the present case, the trial court entered one finding of fact pertaining to petitioner's failure to call in sick:

14. The claimant was out sick one time and did not notify Ms. Faw or Ms. Summey that he was going home sick. He was told in the future that he needed to call if he was going to be absent. Claimant was out again due to the flu and failed to call despite having been warned.

Again, we note that employer's requirement that petitioner call in his absences was a reasonable requirement, and we recognize that petitioner's failure to call in constitutes a violation of this rule. However, ESC failed to enter specific findings of fact that (1) employer expressly warned petitioner that failure to call in was a violation of employer's rules, and (2) continued violation of the rule would result in discharge. We note the Commission's use of the term "warned" in finding of fact 14. However, we are not convinced that the act of advising an employee about the employer's absence policy constitutes a warning. Again, construing the statute strictly in petitioner's favor, we hold that the findings of fact do not support the conclusion that petitioner was substantially at fault under § 96-14(2a) for failing to call in sick.

With regard to petitioner's failure to follow up on his duties, failure to follow directions, and his poor attitude, the same analysis applies as in the first two causes for petitioner's discharge. ESC made general findings that referenced petitioner's behavior and indicated that employer told petitioner that his behavior must change. However, ESC failed to make specific findings that employer warned petitioner that his behavior was in violation of certain rules, and that petitioner continued the behavior after being warned such behavior could lead to discharge. Therefore, we hold that the findings of fact do not support the conclusion that petitioner was substantially at fault under § 96-14(2a) for failure to follow up on his duties, failure to follow directions, or for his poor attitude.

[2] ESC next argues that the trial court erred by concluding that petitioner was not disqualified for unemployment insurance benefits. We disagree.

An individual is disqualified for unemployment benefits if the individual meets any of the criteria provided in N.C. Gen. Stat. § 96-14. In the present case, ESC concluded that petitioner met one of the criteria—that he was substantially at fault under § 96-14(2a). The

BOYLAND v. SOUTHERN STRUCTURES, INC.

[172 N.C. App. 108 (2005)]

superior court determined that ESC did not properly reach its conclusion of substantial fault, and reversed the ESC decision. Because we affirm the superior court's conclusion that the Commission's findings do not support its conclusion that petitioner was at substantial fault, there is no remaining basis to disqualify petitioner from receiving unemployment benefits. Therefore, we hold that the trial court properly concluded that petitioner is qualified for unemployment benefits.

Affirmed.

Judge McCULLOUGH concurs.

Judge STEELMAN dissents.

STEELMAN, Judge dissenting.

I must respectfully dissent from the majority opinion in this case.

I agree with the majority that the issue presented is whether the ESC's findings of fact support its conclusions of law, and that our review is *de novo*.

Resolution of this case hinges on whether employer gave employee warnings sufficient to comply with N.C. Gen. Stat. § 96-14(2a). Employer instructed employee to keep a daily log of the work he preformed and turn these in to his employer. Employer gave employee a palm pilot to facilitate this task. Employee kept the log for a while, but then stopped. Both Ms. Faw and Ms. Summey, asked employee to turn in his log notes. Despite their repeated requests, employee failed to do as asked. The majority holds it is unclear whether Ms. Faw and Ms. Summey's multiple requests to turn in his notes constituted a warning. Such a holding would require employer to have told employee that failure to turn in the notes was a violation of employer's rules and this was a "warning." I would not read the requirements of N.C. Gen. Stat. § 96-14(2a) so narrowly. Where an employer makes repeated requests to an employee to perform a task that was clearly assigned to him and the employee continues to ignore the requests, this constitutes a warning for purposes of "substantial fault" under N.C. Gen. Stat. § 96-14(2a). Whether the employer gave a warning should be determined on the facts of each case and should not be determined by whether the employer used the magic word "warning."

MORTON BLDGS., INC. v. TOLSON

[172 N.C. App. 119 (2005)]

As to finding of fact 14 dealing with employee's failure to call in sick, the ESC specifically found that: "Claimant was out again due to the flu and failed to call despite having been warned." The majority takes a unique approach to this finding, holding: "we are not convinced that the act of advising an employee about the employer's absence policy constitutes a warning." The majority previously noted that the ESC's findings were binding on appeal. The ESC found that employer issued employee a warning. It is not the role of the appellate courts to twist the plain meaning of the ESC's findings to achieve a particular result.

I would hold that either of the ESC's findings 13 or 14, standing alone, support its conclusion of substantial fault. As a result, I would reverse the trial court's order in this matter.