JAMAAL M. JOHNSON, Petitioner, plaintiff
v.
NASH COMMUNITY COLLEGE and
EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA. Respondents.
No. COA08-969
Court of Appeals of North Carolina
Filed March 3, 2009
This case not for publication
Attorney Fred R. Gamin for the Employment Security Commission of North Carolina.
Philip Williams for petitioner-appellant.
Tharrington Smith, L.L.P., by Randall M. Roden and Adam Mitchell, for respondent-appellee Nash Community College.
BRYANT, Judge.
Petitioner Jamaal Johnson appeals from a judgment entered 8 May 2008 in Nash County Superior Court which ordered that the decision of the Employment Security Commission be affirmed in its entirety. For the reasons stated below, we affirm the judgment of the Superior Court.
Petitioner was "disqualified for unemployment benefits beginning June 17, 2007 and continuing until petitioner qualifiesfor benefits in accordance with Employment Security Law," under the authority granted the Employment Security Commission of North Carolina under North Carolina General Statute § 96-14(2). Appeals Referee JoAnn Murray for the Commission made the following findings of fact:
1. [Petitioner] worked for Nash Community College on April 26, 2007 as a GED instructor. From June 17, 2007 until July 14, 2007, [petitioner] has registered for work . . . and has made a claim for benefits in accordance with G.S. 96-15(a). The [petitioner] filed a New Initial Claim effective June 17, 2007. . . . The [petitioner]'s maximum benefit amount is $9,464.00.
2. The Adjudicator issued a conclusion . . . holding [petitioner] disqualified for benefits. [Petitioner] appealed. Pursuant to G.S. 96-15(c), this matter came on before Appeals Referee JoAnn Murray for hearing on August 27, 2007. . . .
3. On April 26, 2007, [petitioner] brought Susan Barkalow, Director of Human Resources, a doctor's note from Raymond M. Baule, M.D., which stated that [petitioner] needed to be out of work from April 26, 2007 through June 19, 2007. Ms. Barkalow sent the doctor's note to the employer's worker's comp insurance company, who responded that Dr. Baule was not a qualified workers comp physician; and [petitioner] was scheduled an appointment with Dr. Robert Saul, who is a qualified workers comp physician.
4. On May 9, 2007, [petitioner] left a message on Susan Barkalow's voice mail that he had been seen by Dr. Robert Saul, who had written him out of work through June 19, 2007.
5. On May 21, 2007, Susan Barkalow received a doctor's note from Dr. Robert Saul, who did not write [petitioner] out of work, stating that he saw no reason why [petitioner] could not work. This contradicted the voice mail message left for Susan Barkalow on May 9, 2007.
6. On May 21, 2007, Susan Barkalow mailed a certified letter to [petitioner]'s correct address, which was returned on June 7, 2007 as unclaimed, which asked [petitioner] if he would be returning to work or request leave without pay, since Dr. Robert Saul had not written him out of work.
7. On or about May 25, 2007, Susan Barkalow mailed [petitioner] a certified letter to his correct address, which was returned as unclaimed, which informed [petitioner] that he would not be compensated by workers comp from April 25, 2007 through June 19, 2007, because Dr. Raymond Baule was not approved as a workers comp physician.
8. [Petitioner] was discharged from his job on June 6, 2007, when he was sent a letter from his employer informing him that he had be [sic] terminated for failure to return to work, after he had been approved to return to work by Dr. Robert Saul, and not responding to certified mail sent to him by his employer.
Petitioner appealed the Appeals Referee's decision to the Commission on the basis that the evidence did not support finding of fact 8. After reviewing the record, the Commission concluded that the Appeals Referee's findings of fact "were based on competent evidence[.]" The Commission affirmed the referee's decision and held that petitioner was disqualified for unemployment insurance benefits.
Petitioner appealed the Commission's decision to the Nash County Superior Court. After examining the record on appeal, thesuperior court entered judgment on 8 May 2008 and ordered that the decision of the Commission be affirmed in its entirety. Petitioner appeals.
On appeal, petitioner argues the superior court erred in denying unemployment benefits where petitioner reasonably relied on a medical note to remain out of work until 19 June 2007. We disagree.
The standard of review for this Court in reviewing the action of [sic] ESC is governed by N.C. Gen. Stat. § 96-15(i) which provides as follows: In any judicial proceeding under [the unemployment insurance statutes], the findings of fact by the Commission, if there is any competent evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. Accordingly, this Court, like the superior court, will only review a decision by the Employment Security Commission to determine whether the facts found by the Commission are supported by competent evidence and, if so, whether the findings support the conclusions of law.
Boyland v. Southern Structures, Inc., 172 N.C. App. 108, 114, 615 S.E.2d 919, 923-24 (2005) (internal citations and quotations omitted).
Under North Carolina General Statute section 96-14(2),
An individual shall be disqualified for benefits:
(2) For the duration of his unemployment . . . if it is determined by the Commission that such individual is . . . unemployed because he was discharged for misconduct connected with his work. Misconduct connected with the work is defined as conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregardof standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
N.C. Gen. Stat. § 96-14(2) (2007).
Here, petitioner argues that the evidence supports findings contrary to those found by the Commission. He asserts that Dr. Raymond Baule, of Atlantic Neurosurgery Consultants, on 26 April 2007 provided petitioner with a note that he was to remain out of work until his next office visit on 19 June 2007. However, because petitioner does not otherwise contest specific findings as unsupported, the findings of fact made by the Commission are presumed supported and deemed conclusive on appeal. See Boyland, 172 N.C. App. at 114, 615 S.E.2d at 924 (citation omitted). Therefore, the sole question remaining is whether the Commission's findings of fact support its conclusion. Id. at 114-15, 615 S.E.2d at 924.
The Commission made the following uncontested findings:
4. On May 9, 2007, [petitioner] left a message on Susan Barkalow's voice mail that he had been seen by Dr. Robert Saul, who had written him out of work through June 19, 2007.
5. On May 21, 2007, Susan Barkalow received a doctor's note from Dr. Robert Saul, who did not write [petitioner] out of work, stating that he saw no reason why [petitioner] could not work. This contradicted the voice mail message left for Susan Barkalow on May 9, 2007.
6. On May 21, 2007, Susan Barkalow mailed a certified letter to [petitioner]'s correct address, which was returned on June 7, 2007 as unclaimed, which asked [petitioner] if he would be returning to work or request leave without pay, since Dr. Robert Saul had not written him out of work.
7. On or about May 25, 2007, Susan Barkalow mailed [petitioner] a certified letter to his correct address, which was returned as unclaimed, which informed [petitioner] that he would not be compensated by workers comp from April 25, 2007 through June 19, 2007, because Dr. Raymond Baule was not approved as a workers comp physician.
On these facts, we hold that petitioner's failure to respond to his employer's communications regarding whether petitioner would return to work or seek leave without pay between 21 May and 6 June 2007, when he was discharged, was "conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee . . . ." N.C.G.S. § 96-14(2) (2007). Accordingly, we overrule petitioner's assignments of error.
Affirmed.
Chief Judge MARTIN and Judge BEASLEY concur.
Report per Rule 30(e).