IN THE MATTER OF: GERALDINE W. WERNER, APPELLEE AND UNIVERSITY OF NORTH CAROLINA, EMPLOYER AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, APPELLANT

No. 7914SC332

(Filed 5 February 1980)

1. **Master and Servant § 108— unemployment compensation—resignation at employer's request—involuntary separation**
    Employees who resign their employment because they are asked to do so by their employer do not leave "voluntarily" within the meaning of G.S. 96-14(1). In this case, an employee's resignation because her employer recom-

mended that she resign and implied that she would be discharged if she failed to resign constituted an involuntary separation.

2. **Master and Servant § 108— unemployment compensation—resignation at employer's request—failure to use grievance procedure—involuntary separation**

   An employee's resignation at her employer's suggestion was not rendered a voluntary separation without good cause attributable to the employer by failure of the employee to seek redress under an available grievance procedure.

APPEAL from *Lee, Judge*. Judgment entered 9 November 1978 in Superior Court, DURHAM County. Heard in the Court of Appeals 27 November 1979.

Werner, the claimant, was employed as secretary to the Director of Contracts and Grants for the University of North Carolina at Chapel Hill. The working relationship between claimant, her immediate supervisor, and one of her senior associates deteriorated, and her supervisor recommended to her that she resign her position. In resigning, claimant cited an excessive work load as a basis for her resignation. However, the evidence before the Employment Security Commission (ESC) established without contradiction that claimant resigned at the request of her employer. Following her resignation, claimant submitted a claim for unemployment compensation. The claim was originally heard by a Claims Deputy of the ESC, who, in denying the claim, held that claimant voluntarily left her job without good cause attributable to her employer. Claimant appealed to the Appeals Deputy who affirmed the findings and conclusions of the Claims Deputy.

Claimant next appealed to the Deputy Commissioner of the ESC, who found that, since claimant's employer had requested her resignation, claimant became involuntarily separated from her employment. The Deputy Commissioner also found, however, that claimant could have declined to resign and could have pursued the grievance procedure provided by her employer. He held that her failure to pursue such a course of action rendered her departure voluntary and refuted any contention that claimant's leaving was for good cause attributable to her employer. Claimant appealed to the Superior Court. Judge Lee entered an order setting aside the Deputy Commissioner and remanded the matter to the

---

In re Werner

---

ESC for entry of an order granting the relief sought by claimant. The ESC appeals to this Court.

*Upchurch, Galifianakis & McPherson, by William V. McPherson, Jr., for claimant appellee.*

*Gail C. Arneke for respondent appellant.*

WELLS, Judge.

Judge Lee, in his conclusions of law, has succinctly set forth the issues in this matter. We repeat them verbatim:

> 1. The resignation of the appellant pursuant to a demand from her supervisor that she resign, was not a voluntary departure from work within the meaning of G.S. Sec. 96-15(1) [*sic*].

> 2. The appellant's failure to take affirmative action to pursue a grievance did not render her otherwise involuntary departure voluntary within the meaning of G.S. Sec. 96-14(1).

> 3. The Deputy Commissioner committed error in holding as a matter of law that the appellant was disqualified from receiving unemployment insurance benefits under G.S. Sec. 96-14(1) solely by reason of her failure to initiate grievance proceedings.

> 4. The appellant is not disqualified for unemployment insurance benfits under G.S. Sec. 96-14(1).

[1] There is no disagreement as to the facts of this case. Only two questions of law are raised: (1) Does the fact that an employee resigns and is not discharged, although the resignation is submitted upon the employer's request, render the resulting separation one made "voluntarily" within the meaning of G.S. 96-14(1)?; (2) Is an involuntary separation rendered voluntary and without good cause attributable to the employer by the failure of the separated employee to seek redress under an available grievance procedure? We answer both questions in the negative.

We perceive that these questions concern matters of first impression before our courts. G.S. 96-14(1) provides that an applicant shall be disqualified from receiving unemployment compensation benefits, ". . . if it is determined by the [Employment Security]

Commission that such individual is, at the time such claim is filed, unemployed because he left work *voluntarily without good cause attributable to the employer* . . . ." [Emphasis added.] Claimant has the burden of proving he is not disqualified. *In re Steelman,* 219 N.C. 306, 13 S.E. 2d 544 (1941). In that the phrase italicized above is nowhere defined in either the statute or our caselaw, we look to the intent of the General Assembly as stated in G.S. 96-2:

> *Declaration of State public policy.*—As a guide to the interpretation and application of this Chapter, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons *unemployed through no fault of their own.* [Emphasis added.]

For clarity, we note that we are not dealing with involuntary separation for misconduct. Such disqualifications are addressed in G.S. 96-14(2) and were the subject of consideration and interpretation by this Court in *In re Collingsworth,* 17 N.C. App. 340, 194 S.E. 2d 210 (1973). We also note that the present case is clearly distinguishable from our opinion in *In re Vinson,* 42 N.C. App. 28, 255 S.E. 2d 644 (1979). In *Vinson,* the employee resigned upon his employer's request after he was arrested on six felony charges of possession and sale of phenobarbital. We held that the cause or reason the employee resigned was his arrest, which was solely at-

tributable to the employee and not to the employer. The fact that the employee resigned and was not discharged was conceded by the claimant to render his separation voluntary, so that the issue of voluntariness was not before the Court. In the present case, the Deputy Commissioner specifically found that, aside from claimant's failure to utilize the employer's grievance machinery, her forced resignation was involuntary.

Employees are often discharged for various reasons which do not operate to disqualify the individual for benefits under the Act. It is not necessary to cite all such examples, but we mention a few to illustrate the point: reduction in work force; insufficient skills; employer going out of business; business changes hands; business relocates; etc. We then reach the type of situation we have here, where an employee may be fired, not for misconduct, but simply because the employee no longer pleases the employer. When an employer is faced with such a situation he may choose from among several options. The employer may attempt to rectify the problem through counseling. He may place the employee on probationary status. The employer may recommend that the employee seek other employment. Or, the employer may discharge the employee. We note the availability to the employer of one additional option which is less severe, embarrassing, or traumatic for the employee than discharge. The employer may request the employee's resignation.

Perceiving that well-intentioned employers may prefer to allow the unsuitable employee the dignity of resignation, we believe that there are strong public policy reasons for not discouraging employers from exercising this option. Employees who resign under such circumstances become unemployed "through no fault of their own." We therefore hold that such employees who quit or resign employment because they are asked by their employer to leave do not leave "voluntarily" within the meaning of G.S. 96-14(1). In this case, the employer's recommendation to resign, coupled with the clear implication that the employee would be discharged if she failed to offer her resignation, constituted an involuntary separation.

Respondent has cited cases from other jurisdictions in support of its position that resignation, even if requested, constitutes voluntary separation. However, in all of these cases the employee

either resigned in advance of the date his resignation would have been required, or the resignation was not "attributable" to the employer. *See, In re Vinson*, 42 N.C. App. 28, 255 S.E. 2d 644 (1979). We note that in a case factually analogous to the one *sub judice*, a Delaware court held that a resignation induced under the pressure of the employer is tantamount to a discharge and is not made "voluntarily" within the disqualifying language of that State's unemployment insurance law. *Anchor Motor Freight, Inc. v. Appeal Board*, 325 A. 2d 374 (Super. Ct. Del. 1974).

[2]   We now address the second question concerning the effect of claimant's failure to resort to an available grievance procedure on the voluntariness of claimant's separation and on whether the separation occurred without good cause attributable to the employer. The Deputy Commissioner concluded:

> Since [claimant] did have a choice of remaining and pursuing the grievance procedure or leaving, it must be concluded she did voluntarily leave work. . . .
>
>      The availability of the grievance procedure likewise refutes any contention she might have that her leaving was for good cause attributable to the University of North Carolina.

We believe that the above language shows that the Deputy Commissioner concluded that claimant's failure to utilize respondent's grievance machinery rendered claimant's separation voluntary and without good cause attributable to the employer *as a matter of law*. The trial court concluded the contrary, that as a matter of law, claimant's failure to use the grievance machinery did not render the separation voluntary or without good cause attributable to the employer.

     Although the General Assembly could have, by statute, disqualified all such employees who do not exhaust the employer's grievance machinery, it has not done so. The disqualifying provisions of G.S. 96-14 are to be construed strictly in favor of the claimant. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968). It therefore would not be consistent with the public policy of our State, as expressed in G.S. 96-2 or the opinions of our courts, to disqualify from benefit eligibility such employees for not availing themselves of the employer's grievance machinery.

**In re Werner**

Affirmed.

Judges HEDRICK and MARTIN (Robert M.) concur.