CAROLINA POWER & LIGHT CO., Petitioner v. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA; and HERMAN D. ROBERTS, Respondents

No. COA07-1247

(Filed 19 August 2008)

**1. Unemployment compensation— acceptance of voluntary early retirement package—leaving work with good cause attributable to employer**

The superior court did not err by affirming the Employment Security Commission's conclusion that respondent employee's decision to retire under a voluntary early retirement package (VERP) constituted leaving work with good cause attributable to the employer, because taking into consideration our case law which is favorable toward applicants for unemployment benefits under the Employment Security Act and construing the unchallenged findings of fact liberally in favor of respondent, he has met his burden of showing that his acceptance of petitioner's VERP was valid and not indicative of an unwillingness to work, and that such acceptance was a result of actions by the employer.

**2. Unemployment compensation— receipt of pension benefits—reduction in benefits not required**

The superior court did not err by affirming the Employment Security Commission's conclusion that respondent employee's unemployment compensation benefit should not be reduced by the amount of pension benefits received based on its determination that the lump sum rollover payment transferred to plaintiff's IRA was not a payment to an individual for retirement purposes and thus did not reduce unemployment benefits under N.C.G.S.

§§ 97-12(f) and 96-14(9) because: (1) although petitioner cites several cases from other jurisdictions which hold unemployment insurance benefits are reduced whenever an employee receives employer-funded retirement benefits regardless of whether those benefits are paid periodically or in a lump sum, our Court of Appeals is not bound by the manner in which other states interpret their statutes with respect to unemployment benefits; (2) the Federal Employment and Training Administration's treatment of lump sum rollover distributions with regard to reductions in unemployment compensation insurance benefits is that a nontaxable rollover does not represent a payment to the individual for purposes of retirement; and (3) the United States Supreme Court has stated that the power of an administrative agency to administer a congressionally created program requires the formulation of policy and the making of rules to fill any gaps, and such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

Judge JACKSON dissenting.

Appeal by petitioner from judgment entered 28 August 2006 by Judge A. Leon Stanback and from order entered 19 July 2007 by Judge Paul G. Gessner in Wake County Superior Court. Heard in the Court of Appeals 18 March 2008.

*Cranfill, Sumner & Hartzog, LLP, by Norwood P. Blanchard, III, for the petitioner-appellant.*

*Thomas S. Whitaker and Thomas H. Hodges, Jr., for respondent-appellee Employment Security Commission of North Carolina.*

BRYANT, Judge.

Carolina Power & Light Co. (petitioner) appeals from a judgment entered 28 August 2006 affirming the decision of the North Carolina Employment Security Commission in Commission Decision No. 06(UI)0997 and an order entered 19 July 2007 affirming the decision of the Employment Security Commission under Docket No. 06(UI)0997.

Herman D. Roberts (Roberts) began working for petitioner 21 March 1981 and in January 2005 worked for petitioner as a field service representative in Whiteville, North Carolina. In January

2005, petitioner began downsizing its field service positions and informed Roberts his position had been eliminated. Roberts was assigned to a temporary position in Clinton, North Carolina. Petitioner informed Roberts he would remain in Clinton until the downsizing was complete.

Roberts asked his supervisor and operations manager if he was going to be transferred back to his original field service representative position or if he was going to Wilmington, North Carolina. Petitioner never responded.

In January 2005, petitioner offered several employees, including Roberts, a voluntary early retirement package (VERP). Roberts asked his supervisors if he would still have a job if he did not accept early retirement. Petitioner did not respond. Roberts accepted the VERP. On 24 July 2005, Roberts filed a claim for unemployment insurance benefits. He certified to the Employment Security Commission (ESC) staff that the reason for his separation from employment was "early retirement."

The matter was referred to the ESC Adjudicator on the issue of separation from last employment. The Adjudicator determined Roberts was disqualified from benefits because he left the job "by his own actions" to accept a voluntary early retirement package. Roberts appealed the decision to an ESC Appeals Referee who reversed the adjudicator's decision. The referee concluded Roberts had good cause for leaving his job, that cause was attributable to his employer, and Roberts was not disqualified from benefits. Petitioner appealed to the ESC.

Before the ESC, Petitioner argued the referee erred in concluding that Roberts had good cause for leaving his job and such cause was attributable to Petitioner. Petitioner also argued that the referee erred by not reducing Roberts' benefit amount by the amount of any pension benefits received pursuant to N.C. Gen. Stat. §§ 96-12(f) and 96-14(9).

On 24 March 2006, the ESC rendered a decision finding Roberts was not disqualified from unemployment insurance benefits, and Roberts "left work within the meaning of the law." The ESC concluded that Roberts' decision to take petitioner's voluntary retirement package was "good cause attributable to [petitioner]." The ESC did not address petitioner's argument that Roberts' benefit amount should be reduced to his receipt of pension benefits.

On 24 April 2006, petitioner filed a Petition for Judicial Review of the ESC 24 March 2006 decision in Wake County Superior Court. On 28 August 2006, Judge Stanback entered a judgment affirming the ESC's determination that Roberts left work with good cause attributable to petitioner and remanded the matter to the ESC "to conduct a fact finding and make a determination on whether the claimant's benefit amount should be reduced by the amount of pension benefits received pursuant to N.C.G.S. §§ 96-12(f) and 96-14(9)."

On 15 December 2006, the ESC issued a decision concluding that Roberts' unemployment benefits should not be reduced by the amount of the claimant's pension benefits rollover under the VERP.

On 12 January 2007, petitioner filed a second petition for judicial review in Wake County Superior Court asserting that the ESC erred in concluding that Roberts' benefit should not be reduced by the amount of pension benefits received under the VERP. On 18 June 2007, Judge Paul Gessner entered an order affirming the ESC's decision that Roberts' benefits should not be reduced by the amount of the pension benefits rollover. From the 28 August 2006 judgment and the 12 January 2007 order, petitioner appeals.

---

On appeal, petitioner raises the following two issues: did the superior court err in affirming the ESC's conclusions that (I) Roberts left work with "good cause attributable to the employer" and that (II) Roberts' benefit should not be reduced by the amount of pension benefits received.

*I*

[1] Petitioner questions whether Roberts' decision to leave work to retire under the VERP constitutes leaving work with "good cause attributable to the employer," as the term is used in North Carolina's Employment Security Law.

Petitioner contends that quitting a job to accept an early retirement package is not, as a matter of law, "good cause attributable to the employer." Petitioner cites North Carolina General Statute 96-14(1).

> Where an employee is notified by the employer that such employee will be separated from employment on some future date and the employee leaves work prior to this date because of the impending separation, the employee shall be deemed to have

left work voluntarily and the leaving shall be without good cause attributable to the employer.

N.C.G.S. § 96-14(1) (2005). Petitioner adds that where an employee voluntarily leaves work without notification from an employer that the employee's job will be terminated, that too is "without good cause attributable to the employer." Petitioner argues that as a result, an employee's decision to leave work because the employer stated the employee will or will not be separated from his employment achieves the same result—the employee is deemed to have left work voluntarily.

"Where an individual leaves work, the burden of showing good cause attributable to the employer rests on said individual, and the burden shall not be shifted to the employer." N.C. Gen. Stat. § 96-14(1a) (2005). "Attributable to the employer as used in G.S. 96-14(1) means produced, caused, created, or as a result of actions by the employer." *Sellers v. National Spinning Co.*, 64 N.C. App. 567, 569, 307 S.E.2d 774, 775 (1983) (citation and internal quotations omitted). " 'Good cause,' as used in the statute, connotes a reason for rejecting work that would be deemed by reasonable men and women as valid and not indicative of an unwillingness to work." *Id.* (citation omitted).

In *Marlow v. N.C. Empl. Sec. Comm'n*, this Court stated the public policy of the Employment Security Act as follows:

The [Employment Security Act, N.C.G.S. § 96-1 *et seq.*] is to be liberally construed in favor of applicants. Further, in keeping with the legislative policy to reduce the threat posed by unemployment to the "health, morals, and welfare of the people of this State," statutory provisions allowing disqualification from [unemployment] benefits must be strictly construed in favor of granting claims.

127 N.C. App. 734, 735, 493 S.E.2d 302, 303 (1997) (internal citations omitted). Our courts have also recognized that "[e]mployees are often discharged for various reasons which do not operate to disqualify the individual for benefits under the Act . . . [such as] reduction in work force . . . ." *In re Werner*, 44 N.C. App. 723, 727, 263 S.E.2d 4, 6 (1980); *see also Boyland v. Southern Structures, Inc.*, 172 N.C. App. 108, 115, 615 S.E.2d 919, 924 (2005) (citations omitted) ("An employee may be disqualified from receiving unemployment benefits if there is substantial fault connected with the employee's work.

Substantial fault . . . shall not include (1) minor infractions of rules unless such infractions are repeated after a warning was received by the employee, (2) inadvertent mistakes made by the employee, nor (3) failures to perform work because of insufficient skill, ability, or equipment."); *West v. Georgia-Pacific Corp.*, 107 N.C. App. 600, 604, 421 S.E.2d 395, 398 (1992) ("[M]isconduct sufficient to disqualify a discharged employee from receiving unemployment compensation is conduct which shows a wanton or willful disregard for the employer's interest, a deliberate violation of the employer's rules, or a wrongful intent.").

In *Werner*, this Court addressed whether employees who resigned at their employer's request left their employment "voluntarily" within the meaning of N.C. Gen. Stat. § 96-14(1). Based on strong public policy concerns for not discouraging employers from this practice, this Court held that those "employees who quit or resign employment because they are asked by their employer to leave do not leave 'voluntarily' within the meaning of G.S. 96-14(1). " *Werner*, 44 N.C. App. at 727, 263 S.E.2d at 7.

Here, the ESC made the following unchallenged findings:

3. The [petitioner] began downsizing its field service representative positions in January 2005. During this time, [Roberts] was informed that his position as a field service representative had been eliminated and that he was going to be reassigned to a temporary position in Clinton, North Carolina. [Roberts] was told that he would be in Clinton until the downsizing was completed.

4. [Roberts] asked his supervisor and operations manager if he was going to be transferred back to his field service representative position . . . . [Roberts] was never given an answer.

5. In January 2005, [petitioner] offered several employees, including [Roberts], an early retirement package. [Roberts] asked his supervisors if he would still have a job if he did not accept the early retirement package. [Roberts'] question was never answered so he accepted the early retirement package.

Taking into consideration our case law which is favorable toward applicants for unemployment benefits under the Employment Security Act and construing the unchallenged findings of fact liberally in favor of Roberts, we hold that Roberts has met his burden of showing that his acceptance of petitioner's voluntary early retirement

package was "valid and not indicative of an unwillingness to work" and that such acceptance was a "result of actions by the employer." Accordingly, petitioner's assignment of error is overruled.

*II*

**[2]** Next, petitioner questions whether the Wake County Superior Court erred in affirming the ESC's determination that Roberts' benefits should not be reduced by the amount of the pension benefits received.

Petitioner argues that the ESC erroneously concluded the lump sum rollover payment transferred to Roberts' IRA was not a payment to an individual "for retirement purposes" and thus did not reduce unemployment benefits under N.C. Gen. Stat. §§ 96-12(f) and 96-14(9).

Under North Carolina General Statutes, section 96-14(9), the General Assembly has stated that

> [t]he amount of benefits payable to an individual for any week . . . which begins in a period with respect to which such individual is receiving a . . . periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by the amounts of any such . . . other payment contributed to in part or in total by the individual's base period employers . . . .

N.C. Gen. Stat. § 96-14(9) (2005).

Petitioner points out that the language under N.C. Gen. Stat. § 96-14 is similar to the language under 26 U.S.C.A. § 3304(a)(15), which states the following:

> [T]he amount of compensation payable to an individual for any week . . . which begins in a period with respect to which such individual is receiving a . . . periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such . . . other payment, which is reasonably attributable to such week . . . .

26 U.S.C.A. § 3304(a)(15) (2005).

Here, the dispositive issue is whether Roberts "received" his lump sum which he had rolled over from petitioner directly into an Individual Retirement Account (IRA).

Petitioner cites several cases from other jurisdictions which hold unemployment insurance benefits are reduced whenever an employee receives employer-funded retirement benefits regardless of whether those employer-funded retirement benefits are paid periodically or in a lump-sum. *See In re Cooney*, 2 A.D.3d 1025, 1025, 768 N.Y.S.2d 526, 527 (2003) (unemployment insurance benefits reduced where employee rolled lump sum pension payout into an IRA); *Koontz v. Ameritech Servs., Inc.*, 466 Mich. 304, 320-24, 645 N.W.2d 34, 43-45 (2002) (employee's lump sum "received" when she requested the funds be transferred and subsequently had the authority to withdraw them); *Giesler v. Bd. of Review*, 315 N.J. Super. 28, 32, 716 A.2d 547, 549 (1998) (employee "received" funds when employee had authority to receive or not receive funds). However, we are not bound by the manner in which other states interpret their statutes with respect to unemployment benefits.

To the contrary, the Federal Employment and Training Administration, a division of the Department of Labor, which interprets Federal law requirements pertaining to unemployment compensation and issues those interpretations to State Employment Security Agencies, stated its interpretation of the treatment of lump sum rollovers with regard to unemployment compensation in pertinent part as follows:

If a rollover from a qualified trust into an eligible retirement plan is not subject to Federal income tax, then it is not considered to be "received" by the individual for purposes of Section 3304(a)(15), FUTA. A non-taxable rollover does not represent a payment to the individual for purposes of retirement.

Unemployment Insurance Program Letter (UIPL) No. 22-87, Change 1 (June 19, 1995) *available at* http://www.ows.doleta. gov/dmstree/uipl/uipl87/uipl_2287c1.htm.[1] Additionally, the United States Supreme Court has stated the following, with respect to federal agencies:

[T]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation

---

[1]. FUTA was amended 17 August 2006 by the Pension Protection Act of 2006, P.L. 109-280. Section 1105 of the Pension Protection Act, entitled "No Reduction in Unemployment Compensation as a Result of Pension Rollovers," amended 26 U.S.C.A. § 3304(a) by adding the following language: "Compensation shall not be reduced under paragraph (15) for any . . . payment which is not includible in gross income of the individual for the taxable year in which paid because it was part of a rollover distribution." *See* 26 U.S.C.A. § 3304(a) (2007).

of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. . . . Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44, 81 L. Ed. 2d 694, 703 (1984) (internal citation omitted).

Acknowledging an absence of prior holdings interpreting North Carolina law on this issue and giving deference to the interpretation of the Federal Employment and Training Administration's treatment of lump sum rollover distributions with regard to reductions in unemployment compensation insurance benefits, we hold that the Wake County Superior Court did not err in affirming the ESC's determination that Roberts' unemployment compensation insurance benefits should not be reduced by the amount of the pension benefits received.

Accordingly, petitioner's assignment of error is overruled.

Affirmed.

Judge WYNN concurs.

Judge JACKSON dissents in a separate opinion.

JACKSON, Judge dissenting.

I respectfully dissent because I believe the facts of this case demonstrate that Roberts was disqualified from receiving unemployment insurance benefits pursuant to North Carolina General Statutes, section 96-14(1).

"Where an individual leaves work, the burden of showing good cause attributable to the employer rests on said individual, and the burden shall not be shifted to the employer." N.C. Gen. Stat. § 96-14(1a) (2007). I note that the portion of section 96-14(1) cited by the majority is not applicable on the instant facts. Roberts was not "notified by the employer that such employee will be separated from employment on some future date . . . ." N.C. Gen. Stat. § 96-14(1). Therefore, the first section of section 96-14(1) is the portion of that statute applicable in the instant case: "An individual shall be disqualified for benefits:

(1) For the duration of his unemployment beginning with the first day of the first week after the disqualifying act occurs with respect to which week an individual files a claim for benefits if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he left work without good cause attributable to the employer.

In this case, the disqualifying act was Roberts' acceptance of the early retirement package offered by petitioner. Roberts voluntarily accepted petitioner's offer of compensation in return for his agreement to participate in petitioner's "Voluntary Early Retirement Package," or VERP. I do not question that Roberts had a difficult decision to make—accept the voluntary early retirement offered by petitioner, or continue to work for petitioner with no guarantee that he would be safe from petitioner's continued downsizing. Roberts could have made the decision to continue employment with petitioner, possibly surviving the downsizing in effect, or possibly being terminated by petitioner. Were Roberts to have been terminated, he then could have applied for unemployment insurance benefits pursuant to Article 2 of Chapter 96. Roberts made a choice that his interests were best served by accepting petitioner's offer of voluntary early retirement, and he received the full benefits of that package.

I would hold, having made an election between two avenues of compensation—one the immediate compensation offered by the VERP, the other the opportunity for continued employment with the safety net of Article 2 of Chapter 96 should he eventually be terminated—that section 96-14(1) disqualifies Roberts from unemployment insurance benefits. Although petitioner offered Roberts the voluntary early retirement package, I do not consider this act, which petitioner did not force upon Roberts, establishes that Roberts' current unemployment is a result of "good cause attributable to the employer." I believe Roberts has failed in his burden of proving otherwise. N.C. Gen. Stat. § 96-14 (1a) (2007). For the foregoing reasons, I respectfully dissent. Because I would reverse on this issue, I do not address petitioner's second issue on appeal.